IN THE UTAH COURT OF APPEALS

----ooOoo----

| | | |
|---|---|---|
| State of Utah, | ) | MEMORANDUM DECISION |
| | ) | |
| Plaintiff and Appellee, | ) | Case No. 20110353-CA |
| | ) | |
| v. | ) | F I L E D |
| | ) | (November 16, 2012) |
| Joseph Richard Skousen, | ) | |
| | ) | 2012 UT App 325 |
| Defendant and Appellant. | ) | |

-----

Fourth District, Provo Department, 091400449
The Honorable Darold J. McDade

Attorneys:    Margaret P. Lindsay and Douglas J. Thompson, Provo, for Appellant
Ryan V. Peters, Provo, for Appellee

-----

Before Judges Orme, Davis, and Thorne.

ORME, Judge:

¶1    Defendant Joseph Richard Skousen was convicted in February 2011 of failing to stop his vehicle at the command of a conservation officer, a class A misdemeanor.[1] *See* Utah Code Ann. § 23-20-24 (LexisNexis 2010).[2] At the close of the State's evidence at trial, Defendant moved for a directed verdict, claiming insufficiency of the evidence.

---

[1]Defendant was charged with two other misdemeanors and convicted of one. Neither of the other charges are at issue in this appeal.

[2]This provision was repealed in May 2012. *See* 2012 Utah Laws, ch. 385, § 1 (Act of May 8, 2012). Accordingly, we cite the version of the Utah Code in effect at the time of the incident.

The trial court denied the motion, and Defendant was subsequently convicted. Defendant now appeals the court's denial of his directed verdict motion. We affirm.

¶2     Early in 2009, two conservation officers employed by the Division of Wildlife Resources were driving northbound on Interstate 15 in Provo. The officers were driving a brown pickup truck equipped with red and blue flashing lights as well as a siren. The truck was clearly marked on both front doors with the Division of Wildlife Resources emblem, under which were the words "Law Enforcement Conservation Officer."

¶3     As the officers neared the Center Street freeway exit in Provo, they noticed two vehicles being driven in an erratic fashion. The drivers later proved to be Defendant and his brother. The brothers were swerving their vehicles at each other and weaving in and out of traffic. Defendant was aggressively changing lanes without signaling and appeared to be trying to run his brother's vehicle off of the road. At one point, Defendant actually pulled up alongside his brother's vehicle and smacked the trunk with his hand through the open window of his car.

¶4     After following and observing the two vehicles for some time, the officers activated their truck's red and blue lights. Defendant's brother exited the freeway in his vehicle soon after, but Defendant continued heading north. The officers followed Defendant and activated their truck's siren. Despite being aware of the lights and siren, Defendant did not stop, and as he drove he repeatedly pointed what appeared to be a camera in the officers' direction. After the officers followed him for four miles, Defendant finally exited the freeway, stopped, and was placed under arrest.

¶5     At trial, Defendant moved for a directed verdict at the close of the State's case, arguing that the State failed to prove that the officers were "conservation officers" as that term is defined in the Wildlife Resources Code. *See* Utah Code Ann. §§ 23-13-1,-2(10) (LexisNexis 2010). Specifically, Defendant argued that the State failed to prove beyond a reasonable doubt that the officers were full-time, permanent employees of the Division of Wildlife Resources at the time of the incident.

¶6     "A trial court's ruling on a motion for directed verdict 'is a question of law[,] which we review for correctness[,] giving no particular deference to the trial court's legal conclusions.'" *State v. Hirschi*, 2007 UT App 255, ¶ 15, 167 P.3d 503 (alterations in original) (quoting *State v. Krueger*, 1999 UT App 54, ¶ 10, 975 P.2d 489). Trial courts may

deny a motion for directed verdict if the State has produced "believable evidence of all the elements of the crime charged." *State v. Montoya*, 2004 UT 5, ¶ 29, 84 P.3d 1183 (citation and internal quotation marks omitted). When a party challenges the denial of a motion for directed verdict alleging insufficiency of the evidence, "[w]e will uphold the trial court's decision if, upon reviewing the evidence and all inferences that can be reasonably drawn from it, we conclude that some evidence exists from which a reasonable jury could find that the elements of the crime had been proven beyond a reasonable doubt." *Id.* (alteration in original) (citation and internal quotation marks omitted).

¶7     At the time of the incident, it was a class A misdemeanor under the Wildlife Resources Code

> for any driver, who having received a visual or audible signal from a conservation officer to bring his vehicle to a stop, to operate his vehicle in willful or wanton disregard of the signal so as to endanger or harm a conservation officer or other person, . . . or to increase his speed and attempt to flee or elude the conservation officer.

Utah Code Ann. § 23-20-24 (LexisNexis 2010). As used within that section and throughout the entire Wildlife Resources Code, *see id.* §§ 23-13-1 to -29-202, a "conservation officer" is specifically defined as "a full-time, permanent employee of the Division of Wildlife Resources who is POST certified as a peace or a special function officer,"[3] *id.* § 23-13-2(10). Under that definition, Defendant correctly asserts that if the officers were not in fact full-time, permanent employees when they arrested Defendant, they would not be considered "conservation officer[s]" under the statute, and the State would have failed to provide believable evidence of all the required elements. *See id.* § 23-20-24.

¶8     At trial, both officers testified that they are, and were at the time of the incident, Division of Wildlife Resources conservation officers. The officers also testified that their

---

[3]"POST" is an acronym for "Peace Officer Standards and Training" and is the program by which law enforcement officers in Utah are trained and certified. *See* Utah Code Ann. §§ 53-6-205, -13-105 (LexisNexis 2010).

department-issued vehicle was clearly marked with the Division of Wildlife Resources emblem and the words, "Law Enforcement Conservation Officer." While both mentioned that they were POST-certified peace officers, neither of the officers specifically testified whether they were employed full time. And neither mentioned whether he was a permanent or temporary employee. Although no direct evidence on these points was offered at trial, it has long been accepted that "an element of an offense in a criminal prosecution may be established . . . indirectly, by an inference drawn from such evidence, where that inference is the only reasonable conclusion to be drawn from the evidence offered." *State v. Lamorie*, 610 P.2d 342, 345 (Utah 1980).

¶9     Defendant contends that although it is possible to infer that the officers were full-time, permanent employees, it is equally reasonable to infer that they were not. He reasons that no direct or circumstantial evidence of full-time or permanent status was presented and, therefore, it is perfectly reasonable to infer that the officers were part-time, temporary, or both. We disagree.

¶10    Very simply, the testimony from both officers was that they are Division of Wildlife Resources "conservation officer[s]." This is not an amorphous, nonsensical, or mysterious term, but rather is a term defined in the applicable statute. *See* Utah Code Ann. § 23-13-2(10). A Division of Wildlife Resources conservation officer is necessarily "a full-time, permanent employee of the Division of Wildlife Resources who is POST certified as a peace or a special function officer." *Id.* There is no reason to assume that the officers were somehow unaware of, or confused about, the meaning of the statutory term of art, "conservation officer." And there is no reason to assume, on the record before us, that the officers committed perjury in claiming to be "conservation officer[s]" when in fact they were not full-time employees or not permanent employees.

¶11    In testifying that they were Division of Wildlife Resources conservation officers, as opposed to some other variety of public or private employee, the officers necessarily testified that they were "conservation officer[s]" as that term is legally defined, i.e., "full-time, permanent employee[s] of the Division of Wildlife Resources who [are] POST certified as . . . peace or . . . special function officer[s]." *Id.* If Defendant believed that the officers did not understand the term, were using it with some other meaning in mind, or were testifying falsely as to their status, it was incumbent upon him to so demonstrate through cross-examination or some other impeachment method.

¶12    Affirmed.


_____

Gregory K. Orme, Judge

-----

¶13    WE CONCUR:


_____

James Z. Davis, Judge


_____

William A. Thorne Jr., Judge