**2016 UT App 112**

## THE UTAH COURT OF APPEALS

JEFFREY WOOD,
Appellant,
*v.*
SALT LAKE CITY CORPORATION,
Appellee.

Memorandum Decision
No. 20150074-CA
Filed May 26, 2016

Third District Court, West Jordan Department
The Honorable Barry G. Lawrence
No. 120412801

Leonard E. McGee and Peter R. Mifflin, Attorneys
for Appellant

Samantha J. Slark, Attorney for Appellee

JUDGE KATE A. TOOMEY authored this Memorandum Decision, in
which JUDGE STEPHEN L. ROTH and SENIOR JUDGE PAMELA T.
GREENWOOD concurred.[1]

TOOMEY, Judge:

¶1      In October 2011, Jeffrey Wood seriously injured his left
arm when he tripped in a pothole on a city-owned street in Salt
Lake City.[2] He sued Salt Lake City Corporation (the City) for

---

1. Senior Judge Pamela T. Greenwood sat by special assignment
as authorized by law. *See generally* Utah R. Jud. Admin. 11-
201(6).

2. "On appeal from a bench trial, we view the evidence in a light
most favorable to the trial court's findings, and therefore recite
the facts consistent with that standard." *Johnson v. Higley*, 1999

(continued…)

negligence, claiming it failed to identify and repair the pothole. The district court decided in favor of the City, finding that the City did not have the necessary notice to be liable for not repairing the pothole and thus concluded that the City had not failed to exercise reasonable care. We affirm.

¶2     The pothole at issue was on the side of a residential street, Blaine Avenue, near a cement curb. At the November 2014 bench trial, to show the City had notice or should have had notice of the pothole, Wood presented evidence that the pothole had been there for approximately four months. He also presented evidence that at some point there was spray paint on the asphalt around the pothole and that Salt Lake City employees had been on the street during the time the pothole existed. Specifically, the City's Streets Division director testified that street sweepers swept Blaine Avenue five times and that sanitation workers collected garbage approximately sixteen times in the four months before Wood's accident.

¶3     But the director also testified that the City does not spray paint around potholes. And although sanitation workers and street sweepers are asked to report potholes when they happen to see them, the City does not require those workers to identify and report potholes. The director further testified that street sweepers and sanitation workers might not notice a pothole on the side of the road and cannot be expected to actively look for potholes because "they need to pay attention to what they're doing" and "[t]hey have their hands full performing that job." Street sweepers, he testified, have "got to be making sure that they don't cause any accidents, they don't run the kids down, there are no pets in the way, they're not hitting any parked cars or items like that." He also testified that sanitation workers might not notice a pothole because they "have to drive a heavy

_____

(…continued)
UT App 278, ¶ 2, 989 P.2d 61 (citation and internal quotation marks omitted).

truck and make sure they park exactly where the arm can reach and . . . pick up a can."

¶4      The court also heard testimony that the City's engineering department surveys and inspects the condition of city-owned roadways on a regular basis and its asphalt-maintenance crews actively look for and repair potholes every day. The director testified that because they can appear overnight, potholes are "a moving target" on the approximately 1,858 miles of city-owned streets and thus he said the City cannot "guarantee that [its streets are] not going to have any potholes." In an effort to combat the problem, the director testified that the City monitors trouble areas and responds to citizens' and other employees' reports of potholes through a telephone or web-based reporting system. Moreover, the asphalt-maintenance crews look up and down streets as they perform other work to identify and then repair potholes they see.[3] Once a pothole is reported, the City's policy is to repair it within twenty-four hours.

¶5      Finding that the City exercised reasonable care to maintain its streets, the court stated,

> The [C]ity has a . . . system in place that was able to identify and fix 29,000 potholes in 2011. For [Wood's] argument to prevail on this, we would have to conclude that that wasn't good enough . . . . I cannot conclude that the [City's] system . . . was unreasonable or that [it] should have done something more to detect the potholes.

---

3. We note that the pothole at issue in this case was repaired when a citizen reported another pothole on a nearby street and before the City knew of Wood's accident. When he was there to repair the reported pothole, an asphalt-maintenance crew member noticed the Blaine Avenue pothole and repaired it.

Thus, as the fact-finder, the district court determined that, although it found that the pothole existed for approximately four months before Wood's accident, the City was not negligent because it had reasonable practices and procedures to identify and repair potholes.

¶6 "To assert a successful negligence claim, a plaintiff must establish that (1) defendant owed plaintiff a duty of care, (2) defendant breached that duty, and . . . (3) the breach was the proximate cause of (4) plaintiff's injuries or damages." *B.R. ex rel. Jeffs v. West*, 2012 UT 11, ¶ 5 n.2, 275 P.3d 228. Although it "need not keep its streets in a perfect or an absolutely safe condition," *Braithwaite v. West Valley City Corp.*, 860 P.2d 336, 338 (Utah 1993), a municipality has a duty to keep its streets in a "reasonably safe condition," *Trapp v. Salt Lake City Corp.*, 835 P.2d 161, 161–62 (Utah 1992).[4]

---

4. "[D]uty is a question of law determined on a categorical basis . . . ." *B.R. ex rel. Jeffs v. West*, 2012 UT 11, ¶ 25, 275 P.3d 228. Wood argues the district court inappropriately evaluated the City's duty "based on case-specific factual determinations." We disagree. A review of the court's determination makes clear that it applied the duty that applies to all municipalities—the duty to keep its streets and sidewalks in a reasonably safe condition. *See Braithwaite v. West Valley City Corp.*, 860 P.2d 336, 338 (Utah 1993) (explaining "that it has long been the law in Utah . . . that a municipality has a duty to exercise ordinary care to keep streets which it has opened for travel and which it has invited the public to use in a reasonably safe condition"); *Trapp v. Salt Lake City Corp.*, 835 P.2d 161, 161–62 (Utah 1992) (explaining that cities have a duty "to keep sidewalks and streets in a reasonably safe condition"). Then, based on the specific facts of this case, the court reviewed whether the City had actual notice or constructive notice and whether it breached its duty to maintain the streets in a reasonably safe condition.

¶7     If a plaintiff alleges that a defendant negligently failed to remedy a temporary unsafe condition that the defendant did not create, the plaintiff must present evidence to show that the defendant had notice of the unsafe condition.[5] *See Jex v. JRA, Inc.*, 2008 UT 67, ¶ 16, 196 P.3d 576; *Goebel v. Salt Lake City S. R.R.*, 2004 UT 80, ¶ 22, 104 P.3d 1185. "A plaintiff . . . must show that the defendant had actual or constructive knowledge of the condition before the accident." *Kerr v. City of Salt Lake*, 2013 UT 75, ¶ 39, 322 P.3d 669. "Constructive knowledge may be proven by demonstrating that the unsafe condition 'existed long enough that [the defendant] should have discovered it.'" *Id.* (alteration in original) (quoting *Jex*, 2008 UT 67, ¶ 18). "In the case of either actual knowledge or constructive knowledge, the plaintiff must also show that the defendant had sufficient notice of the unsafe condition 'that in the exercise of reasonable care [the defendant] should have remedied it.'" *Id.* (alteration in original) (quoting *Goebel*, 2004 UT 80, ¶ 19). Thus, the City can be held liable only if it failed to exercise reasonable care to remedy the pothole after it obtained actual or constructive notice of it.

¶8     "[W]hether a duty exists is a question of law which we review for correctness." *Fishbaugh v. Utah Power & Light*, 969 P.2d 403, 405 (Utah 1998) (citation and internal quotation marks omitted). But "[i]t is a question of fact for the [fact-finder] whether under all these circumstances the defendant had actual or constructive notice." *Ohlson v. Safeway Stores, Inc.*, 568 P.2d 753, 755 (Utah 1977). "[A] challenge to the findings of fact must show that the evidence, viewed in a light most favorable to the trial court, is legally insufficient to support the contested finding. The challenging party must marshal all the *supporting* evidence and demonstrate its insufficiency." *Cowley v. Porter*, 2005 UT App 518, ¶ 32, 127 P.3d 1224 (citation omitted). "[A] party challenging a factual finding or sufficiency of the evidence to support a verdict will almost certainly fail to carry its burden of

_____

5. The parties do not dispute that this is a temporary dangerous condition, as opposed to a permanent dangerous condition.

persuasion on appeal if it fails to marshal." *State v. Nielsen*, 2014 UT 10, ¶ 42, 326 P.3d 645.

¶9     Wood makes no apparent challenge to the district court's factual findings. But to the extent Wood challenges the finding that the City had no notice of the pothole, Wood's analysis of the authority and the facts is wholly lacking. Wood does not marshal any of the supporting evidence. Rather, without reference to the record, he merely states, "The court found that the pothole at issue had existed for four months" and "[e]vidence was presented to the trial court that over 21 city employees pass[ed] the pothole."[6] He then asserts, "A landowner has constructive notice of a dangerous condition when the condition has 'existed long enough that [the landowner] should have discovered it.'" (Alteration in original.) (Quoting *Jex*, 2008 UT 67, ¶ 16.) He does not apply that case to the facts of this case or explain how the court's findings were insufficient. *See State v. Thomas*, 961 P.2d 299, 305 (Utah 1998). Thus, regarding the court's factual findings, Wood has failed to carry his burden of persuasion on appeal. *See State v. Roberts*, 2015 UT 24, ¶ 18, 345 P.3d 1226 (explaining that "like the marshaling requirement imposed by rule 24(a)(9) of the Rules of Appellate Procedure, our adequate briefing requirement" is a "'natural extension of an appellant's burden of persuasion.'" (quoting *Nielsen*, 2014 UT 10, ¶ 40)). We therefore conclude the court did not err when it determined the City had no notice of the pothole's existence and did not breach its duty to maintain the streets in a reasonably safe condition.

¶10     Nevertheless, Wood argues the district court's decision was incorrect as a matter of law. Specifically, he argues the court erred "when it declined to find a duty on Salt Lake City's employees to report dangerous condition[s] they may observe

---

6. We note that Wood has not supported this proposition; it is unclear from the record whether twenty-one city workers actually passed the pothole.

within the course and scope of their employment." Wood's argument is far from clear, but he seems to argue that without holding that all city employees have a duty to report unsafe conditions, the court improperly failed to impute to the City the sanitation workers' and street sweepers' knowledge of the pothole. He asserts that a "corporation's knowledge is entirely 'imputed to it from the knowledge possessed by its officers and agents.'" (Quoting *Lowe v. April Indus., Inc.*, 531 P.2d 1297, 1299 (Utah 1974).) Thus, he argues, the "correct duty analysis turns on whether employees of a municipal corporation impute notice to the municipal corporation of temporary dangerous conditions within the municipality." Although we agree that an agent's knowledge may be imputed to its principal, we are not persuaded by Wood's argument.

¶11 Wood asks us to assume that because the court did not find the City had constructive notice, it did not consider what the street sweepers and sanitation workers knew. But, again, whether the City had constructive notice of the pothole is a question of fact, which Wood failed to sufficiently challenge. There was no evidence any City employee knew of the pothole. Although the court declined to hold that all of the City's public works employees have a duty to report potholes when they see them, nothing in the record suggests the court failed to consider whether the sanitation workers and street sweepers knew of or should have known of the pothole. To the contrary, it found there was no evidence that "show[ed] *any* City worker identified and reported the pothole prior to [Wood's] fall." (Emphasis added.) And the court expressly considered whether the sanitation workers and street sweepers should have known about the pothole when it determined that "[s]anitation workers and street sweepers should be most concerned with doing the job they are supposed to be doing" and to "charge them with the additional task of pothole inspection is not reasonable and could be unsafe." The court explained it had "difficulty concluding the City should have discovered and repaired the pothole" when Blaine Avenue residents "did not think it was important enough to report." It further concluded that, considering the staggering

number of potholes the City repaired in 2011, the City's allocation of resources for pothole repair was reasonable and the court would not require the City to do more. Therefore, Wood's argument fails because without evidence that an employee had actual notice or constructive notice of the pothole, he cannot demonstrate the court failed to impute a worker's notice to the City.

¶12   In conclusion, although it is regrettable that Wood suffered this injury, "[n]ot every accident that occurs gives rise to a cause of action upon which the party injured may recover damages from someone. Thousands of accidents occur every day for which no one is liable in damages, and often no one is to blame, not even the ones who are injured." *Schnuphase v. Storehouse Mkts.*, 918 P.2d 476, 479–80 (Utah 1996) (alteration in original) (citation and internal quotation marks omitted). For the aforementioned reasons, we conclude the district court did not err when it determined the City did not negligently fail to repair the pothole. We therefore affirm.

_____