**2017 UT App 166**

## THE UTAH COURT OF APPEALS

PATRICK LILEY,
Appellee,
*v.*
CEDAR SPRINGS RANCH INC.,
Appellant.

Opinion
No. 20150267-CA
Filed August 31, 2017

Fourth District Court, Nephi Department
The Honorable Jennifer A. Brown
No. 120600012

Brent D. Wride, Attorney for Appellant

Joseph E. Wrona and Jared C. Bowman, Attorneys
for Appellee

JUDGE DAVID N. MORTENSEN authored this Opinion, in which
JUDGES STEPHEN L. ROTH and KATE A. TOOMEY concurred.[1]

MORTENSEN, Judge:

¶1      A Black Angus cow strayed from the safety of its herd on property owned by Cedar Springs Ranch Inc., wandered through a hole in a poorly maintained fence, and found its way onto Highway 28 near Levan, Utah. While returning home one night, Patrick Liley collided with the cow, killing it and suffering injuries himself. Liley brought a negligence claim against Cedar Springs and prevailed at trial despite Cedar Springs' insistence

---

1. Judge Stephen L. Roth participated in this case as a member of the Utah Court of Appeals. He retired from the court before this decision issued.

that Warm Creek Ranch, which leased Cedar Springs' property and owned the cows at the time of the accident, was responsible for Liley's injuries. Cedar Springs appeals the trial court's decisions on its summary judgment and directed verdict motions. We reverse.

## BACKGROUND

¶2    Dale Dorius and his wife own Cedar Springs Ranch. Dorius is also one of six shareholders in Warm Creek Ranch. Dorius testified that in 1972, while acting on behalf of both entities, Dorius entered into an oral lease between Cedar Springs and Warm Creek. The lease allowed Warm Creek to use Cedar Springs' land to graze cattle for approximately four months of every year. Warm Creek was running cattle on Cedar Springs' property in October 2009—the time of Liley's accident. Liley admitted that Cedar Springs did not own the cattle.

¶3    At 2:00 a.m. on October 4, 2009, Liley was driving home from an elk hunting trip, heading north on Highway 28 near Levan, Utah. Liley's truck collided with a cow that had wandered onto the road. Liley pulled over and called 911. He heard a number of cows bellowing on the east side of the freeway—the direction of Cedar Springs' property. Liley also noted large holes in the fence along Cedar Springs' property and observed a tag on the cow's ear, which read "Dorius Family."[2]

¶4    In November 2011 Liley filed this action for negligence, naming Cedar Springs, Dorius, the Utah Department of Transportation (UDOT), Juab County, and Sanpete County as defendants. Dorius, Juab County, and Sanpete County were

---

2. The tag, along with the cow's head, went missing sometime between the night of the accident and a follow-up investigation one or two days later.

dismissed from the action and their dismissal is not the subject of this appeal. UDOT prevailed on a directed verdict motion at trial, leaving Cedar Springs as the last remaining defendant. Liley never brought a claim against Warm Creek.

¶5     Before trial, Cedar Springs filed a motion for summary judgment. Cedar Springs argued that Liley failed to establish that it owed him any duty. In his response, Liley admitted that "Warm Creek . . . is a Corporation [that] owns and operates cattle and leases property from Cedar Springs." Liley argued that Cedar Springs owed him a duty under section 41-6a-407 of the Utah Code, which states,

> A person who owns or is in possession or control of any livestock may not willfully or negligently permit any of the livestock to stray or remain unaccompanied on a highway[.]

Utah Code Ann. § 41-6a-407(1)(a) (LexisNexis Supp. 2016).[3] The thrust of Liley's argument was that "Dorius[] fits the definition as either 'owning or controlling the possession of any livestock' under the statute and it[4] therefore has a duty."

¶6     The trial court did not issue a written ruling on Cedar Springs' motion for summary judgment. On the first day of trial, the trial court met with counsel in chambers. The minute entry reflects that the trial court made "findings" and denied Cedar Springs' motion for summary judgment. The in-chambers meeting, however, was held off the record, meaning the trial

---

3. We cite the most current version of the Utah Code. The statute has not substantively changed since the time of the accident. *Compare* Utah Code Ann. § 41-6a-407 (LexisNexis Supp. 2016), *with id.* (LexisNexis 2005).

4. Presumably, "it" refers to Cedar Springs.

court's findings and basis for denying Cedar Springs' summary judgment motion are not available to us.[5]

_____

5. The parties give us some clues as to the basis of the trial court's ruling on summary judgment from the context of the arguments on appeal. Cedar Springs states its first issue presented for review is whether the trial court erred "in essentially ruling that, as a matter of law, a landlord that owns real property on which a tenant's cows are grazing is 'in possession or control' of the livestock [under Utah Code section 41-6a-407(1)(a)]." Liley responds to Cedar Springs' issue statement, explaining,

> The trial court made no such ruling. The trial court found that evidence existed to suggest that [Cedar Springs] had "some duty to control the actions of its tenant," and the trial court opined that [Cedar Springs'] duty could be impacted by the fact [Cedar Springs] and tenant [Warm Creek] are both owned and controlled by Dale Dorius. The trial court therefore denied summary judgment on the question of duty and allowed trial to proceed on the question of the scope of [Cedar Springs'] duty versus [Warm Creek's] duty.

Liley does not cite the quoted language in his explanation, though it appears to be a quote from the trial court's ruling on Cedar Springs' motion for a directed verdict, not summary judgment. In any event, without a record of the trial court's ruling, we are left in the dark, and neither party has attempted to supplement the record as permitted under the appellate procedure rules. We also note that trial courts are not required to specify the grounds on which they deny summary judgment. *See Normandeau v. Hanson Equip., Inc.*, 2009 UT 44, ¶ 9, 215 P.3d 152. Either way, a trial court's decision on summary judgment is reviewed for correctness. *See Lyman v. Solomon*, 2011 UT App 204, ¶ 3, 258 P.3d 647.

¶7    The jury trial commenced, and, at the close of Liley's case-in-chief, Cedar Springs moved for a directed verdict. Cedar Springs again argued that Liley had not established that Cedar Springs owed Liley any duty. Liley again argued that Cedar Springs owed him a statutory duty under section 41-6a-407. Liley additionally argued that Cedar Springs had a duty to use reasonable care in controlling Warm Creek as its lessee.

¶8    The trial court, this time on the record, denied Cedar Springs' motion for a directed verdict. The trial court concluded,

> There is a landlord/tenant relationship based upon his own testimony, and I do find that a landlord does have some duty to control the actions of its tenant, and I would say that at least in this case I would think that duty perhaps is slightly greater given the close interrelationship of the parties. And so . . . I am going to find that there is sufficient competent evidence to go to the jury on the issue of negligence with regard to Cedar Springs[.]

¶9    Following the trial court's ruling, Cedar Springs presented additional evidence as part of its defense. At the conclusion of the trial the jury returned a special verdict form in which it allocated 85% fault for the accident to Cedar Springs, 15% to Liley, and no fault to Warm Creek. The trial court entered judgment on the special verdict. Cedar Springs appeals.

ISSUES AND STANDARDS OF REVIEW

¶10   Cedar Springs appeals the trial court's denial of its motions for summary judgment and directed verdict that it

owed Liley a duty.[6] We review whether the trial court erred in denying those motions.

¶11  The grant or denial of summary judgment presents a question of law and is reviewed for correctness. *See Lyman v. Solomon*, 2011 UT App 204, ¶ 3, 258 P.3d 647. Liley argues we should not review the summary judgment motion because the case proceeded to trial where the parties fairly litigated the facts. This premise applies when the issue on appeal is "whether a dispute of material fact existed at the summary judgment stage." *See Kerr v. City of Salt Lake*, 2013 UT 75, ¶ 29, 322 P.3d 669 (stating that we "do not review on appeal . . . whether a dispute of material fact existed at the summary judgment stage of a litigation if the trial court denies summary judgment"). But appellate review is available "when a motion for summary judgment is denied on a purely legal basis." *See ASC Utah, Inc. v. Wolf Mountain Resorts, LC*, 2013 UT 24, ¶ 12, 309 P.3d 201. As this court has explained, "[m]ost cases involving claims of negligence are not susceptible to summary disposition, but the initial question of the existence of a legal duty in tort cases is a question of law for the court to determine." *Lyman*, 2011 UT App 204, ¶ 3 (citation and internal quotation marks omitted). "[W]hether a duty exists is a question of law which we review for correctness." *Wood v. Salt Lake City Corp.*, 2016 UT App 112, ¶ 8, 374 P.3d 1080 (alteration in original) (citation and internal quotation marks omitted).

¶12  The grant or denial of a directed verdict is also a question of law reviewed for correctness. *See Proctor v. Costco Wholesale Corp.*, 2013 UT App 226, ¶ 6, 311 P.3d 564. Liley argues that our

---

6. Cedar Springs also challenges the internal consistency of the jury's findings on its special verdict. Because we reverse the trial court's legal determinations on duty, we do not reach the jury's findings on the special verdict.

review of the directed verdict motion must be highly deferential in favor of the trial court's determination. *See State v. Hawkins*, 2016 UT App 9, ¶ 32, 366 P.3d 884 ("When an appellant challenges the denial of a motion for a directed verdict based on the sufficiency of the evidence, [t]he applicable standard of review is . . . highly deferential." (alterations in original) (citation and internal quotation marks omitted)). Again, this is true when the basis of our review involves facts and the sufficiency of the evidence; however, "[w]hether a duty exists is a question of law which we review for correctness," *Wood*, 2016 UT App 112, ¶ 8 (citation and internal quotation marks omitted), and we give "no particular deference to the trial court's legal conclusions," *State v. Skousen*, 2012 UT App 325, ¶ 6, 290 P.3d 919 (citation and internal quotation marks omitted).

ANALYSIS

¶13   Cedar Springs challenges the trial court's summary judgment and directed verdict rulings, specifically regarding whether a duty exists. "In order to recover for negligence, the plaintiff must affirmatively establish . . . that the defendant owed the plaintiff a duty." *Callister v. Snowbird Corp.*, 2014 UT App 243, ¶ 11, 337 P.3d 1044 (citation and internal quotation marks omitted). We first examine the trial court's ruling on summary judgment.

I. Summary Judgment

¶14   Where a motion for summary judgment is denied and the parties go to trial, "[a]ppellate review is available only when [the] motion for summary judgment is denied on a purely legal basis." *See ASC Utah, Inc.*, 2013 UT 24, ¶ 12. A record of the trial court's reason for denying Cedar Springs' summary judgment motion is not available to us, but the trial court could not have permitted the claim to proceed to trial without first concluding that Cedar Springs owed Liley a duty. Further, the parties'

moving papers are available for our review, and we can ascertain the purported duty that Liley advanced before the trial court. Because "[w]hether a duty exists is a question of law," *Wood*, 2016 UT App 112, ¶ 8 (citation and internal quotation marks omitted), appellate review is available on this issue even in the absence of a complete record.

¶15     In arguing against Cedar Springs' motion for summary judgment, Liley claimed that Cedar Springs owed him a duty under section 41-6a-407(1)(a) of the Utah Code, which states,

> A person who owns or is in possession or control of any livestock may not willfully or negligently permit any of the livestock to stray or remain unaccompanied on a highway[.]

Utah Code Ann. § 41-6a-407 (LexisNexis Supp. 2016). In its response to the motion, Liley admitted that Cedar Springs does not own any cattle and that "Warm Creek . . . is a Corporation [that] owns and operates cattle and leases property from Cedar Springs." The question is, then, whether a landlord is "in possession or control of any livestock" when it leases its property to a tenant that brings livestock onto the property.[7] *See id.* Moreover, for liability to attach, the owner or the person in possession or control of the livestock must "permit" the livestock to stray or remain on a highway. *See id.*

¶16     Section 41-6a-407 makes no mention of a landlord or any other third party, nor does it contain a definition for "possession" or "control." We interpret statutory language

---

7. We note that Liley disputed whether the lease contained a provision charging Warm Creek with the obligation to maintain the fences. But this dispute does not alter our analysis of Liley's argument that a landlord has a duty under Utah Code section 41-6a-407.

"according to its ordinary and usually accepted meaning." *Marion Energy, Inc. v. KFJ Ranch P'ship*, 2011 UT 50, ¶ 14, 267 P.3d 863 (citation and internal quotation marks omitted). A statute is ambiguous when "its terms remain susceptible to two or more reasonable interpretations after we have conducted a plain language analysis." *Id.* ¶ 15. When a statute is unambiguous "no other interpretive tools are needed." *Id.* (citation and internal quotation marks omitted).

¶17    Section 41-6a-407 is unambiguous. "A person who . . . is in possession or control of any livestock," whether or not he or she is the owner of the animals, may not permit the livestock to be on certain highways. We first look to the plain meaning of the specific terms "possession" and "control." Possession means "actual holding or occupancy, either with or without rights of ownership." *Possession*, Dictionary.com, http://www.dictionary .com/browse/possession [https://perma.cc/NZF7-CLM6?type= image]. The plain meaning of the term "possession" is unambiguous. *See In re M.B.*, 2008 UT App 433, ¶ 19, 198 P.3d 1007 (concluding that the term "possession" is unambiguous while deciding whether the term encompassed both actual and constructive possession in a burglary statute). Control means "to exercise restraint or direction over; dominate; command." *Control*, Dictionary.com, http://www.dictionary.com/browse/ control [https://perma.cc/KL6X-U24W?type=image]. The term "control" is also unambiguous. *See Turner v. Staker & Parson Cos.*, 2012 UT 30, ¶ 13, 284 P.3d 600 (conducting a plain language analysis of the term "actual possession or control" and discerning no ambiguity). Mere status as a landlord does not make the landlord a possessor or a person in control of the tenant's personal property, in this case the cows. Liability under the statute flows only from possession or control of the livestock, not possession or control of the land. As such, the statute does not apply to Cedar Springs merely by virtue of its status as a lessor.

¶18 By the plain meaning of the statute, and under the undisputed facts of this case, Cedar Springs did not have possession or control over the cattle owned by Warm Creek. A landlord does not actually hold its tenant's property, as would be indicative of having possession. Nor does a landlord direct or command its tenant's property, as would be indicative of control, except by some term of the lease. Here, Cedar Springs owns no cattle and leases its property to Warm Creek, which uses the land to run cattle. There is no evidence of any lease term allowing Cedar Springs to dispose of or manage the cattle belonging to Warm Creek. Therefore, the unambiguous statutory language, as applied to the undisputed facts, provides no support for a claim that Cedar Springs owed any duty to Liley under section 41-6a-407.

¶19 Liley's failure to show a duty means he did not meet his burden on summary judgment.

> A summary judgment movant, on an issue where the nonmoving party will bear the burden of proof at trial, may satisfy its burden on summary judgment by showing, by reference to the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, that there is no genuine issue of material fact. Upon such a showing, whether or not supported by additional affirmative factual evidence, the burden then shifts to the *nonmoving* party, who may not rest upon the mere allegations or denials of the pleadings, but must set forth specific facts showing that there is a genuine issue for trial.

*Orvis v. Johnson*, 2008 UT 2, ¶ 18, 177 P.3d 600 (citations and internal quotation marks omitted).

¶20    Here, Liley ultimately bore the burden at trial to demonstrate that Cedar Springs owed him a duty. *See Callister v. Snowbird Corp.*, 2014 UT App 243, ¶ 11, 337 P.3d 1044. Cedar Springs demonstrated by Dorius's testimony that Warm Creek had leased the property and was using the property to graze cows—and Liley admitted as much. Thus, Cedar Springs carried its initial burden on summary judgment, and the burden then shifted to Liley as the party ultimately bearing the burden of proof at trial to show that Cedar Springs had possession or control of the cattle. The mere fact that Dorius is a principal of both Cedar Springs and Warm Creek is not enough. While legal doctrines exist, such as piercing the corporate veil,[8] which can impose a company's liability personally on its principal, *see, e.g.*, *Lodges at Bear Hollow Condo. Homeowners Ass'n, Inc. v. Bear Hollow Restoration, LLC*, 2015 UT App 6, ¶ 13, 344 P.3d 145, we are aware of no doctrine that imposes the liabilities of one company onto another solely by virtue of a shared principal. And Liley points to none. The fact that Dorius is a principal of both Warm Creek and Cedar Springs does not establish a duty held by Cedar Springs with respect to the activities of Warm Creek's cattle.

¶21    Ultimately, Liley's arguments in support of affirmance miss the mark. He focuses on the existence of disputes of material facts that should be decided by the jury. But these arguments ignore that "[w]hether a duty exists is a question of law." *Wood v. Salt Lake City Corp.*, 2016 UT App 112, ¶ 8, 374 P.3d 1080 (citation and internal quotation marks omitted). In his own words, Liley asserts, "[W]hether [Cedar Springs] had a duty to control the cattle . . . was a question of fact for the jury." This assertion ignores that "appellate courts have consistently held

---

8. Here, the trial court expressly held that the piercing-the-corporate-veil doctrine did not apply, and no one challenges this conclusion on appeal.

that '[t]he determination of whether a legal duty exists falls to the court.'" *Normandeau v. Hanson Equip., Inc.*, 2009 UT 44, ¶ 18, 215 P.3d 152 (alteration in original) (quoting *Yazd v. Woodside Homes Corp.*, 2006 UT 47, ¶ 14, 143 P.3d 283). Liley's contention confirms the very error that Cedar Springs argues on appeal— that the trial court erroneously denied its motion for summary judgment.

¶22    In sum, under the plain language of the statute, the landlord-tenant relationship here does not establish that Cedar Springs was in possession or control of cattle owned by Warm Creek. Insofar as the trial court ruled that Cedar Springs owed Liley a duty stemming from the statute, such ruling was in error. From the record we have before us, it appears summary judgment should have been granted. However, because the complete record of the trial court's findings and ruling on summary judgment is not before us, and because we typically presume the regularity of the proceedings, we are loath to base a reversal on the incomplete record of the summary judgment motion alone. Therefore, we turn to the motion for directed verdict where the issue was essentially presented anew.

## II. Directed Verdict

¶23    A court may grant a directed verdict motion "[i]f a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." Utah R. Civ. P. 50(a)(1). Cedar Springs moved for a directed verdict and, just as it did in its summary judgment motion, argued that Liley did not establish that Cedar Springs owed him any duty. Liley asserted again that Cedar Springs owed him a statutory duty under section 41-6a-407 of the Utah Code. Liley additionally argued that Cedar Springs had a duty to use reasonable care in controlling Warm Creek as its lessee. But Liley articulated to the

trial court no legal basis for this alleged latter duty during the arguments on the motion.

¶24 On directed verdict, however, the trial court ruled that a duty arose from the relationship of landlord and tenant:

> There is a landlord/tenant relationship based upon [Dorius's] own testimony, and I do find that a landlord does have some duty to control the actions of its tenant, and I would say that at least in this case I would think that duty perhaps is slightly greater given the close interrelationship of the parties. And so . . . I am going to find that there is sufficient competent evidence to go to the jury on the issue of negligence with regard to Cedar Springs[.]

¶25 Thus, the basis of Cedar Springs' duty, as articulated by the trial court, stems solely from its relationship as landlord with Warm Creek and imposes a duty, not to use reasonable care in controlling the cattle, but to control its tenant. Liley has identified no such duty in Utah jurisprudence that applies to the facts of this case, and our review of applicable law does not support the trial court's conclusion.

¶26 The law generally imposes a duty on a landlord to tenants and third parties for portions of property over which it maintains possession or control, such as common areas, that pose a danger. *See Wilson v. Woodruff*, 235 P. 368, 369 (Utah 1925). The law also generally imposes a duty on a landlord to ensure the leased premises intended for housing are suitable for habitation. *See, e.g., Davencourt at Pilgrims Landing Homeowners Ass'n v. Davencourt at Pilgrims Landing, LC*, 2009 UT 65, ¶ 56, 221 P.3d 234. A landlord that leases property for purposes of public admission is responsible "to at least inspect the property and make reasonable efforts to ensure that conditions creating a reasonably foreseeable risk of harm are corrected before the

property is delivered to a tenant." *See Darrington v. Wade*, 812 P.2d 452, 458–59 (Utah Ct. App. 1991). Lastly, a landlord may be liable for injury where it knows of a dangerous condition on the property before leasing the property. *See English v. Kienke*, 848 P.2d 153, 155 (Utah 1993). Absent these exceptions, a landlord is under no obligation to make repairs, even where the property becomes hazardous. *See id.* at 156 (explaining that a landlord is not liable for an injury caused by a dangerous condition created by the tenant). Liley has not demonstrated that, under the circumstances of this case, any of these exceptions apply here or provide support for the trial court's ruling that a landlord must use reasonable care to control its tenant.

¶27   "[A] landlord is not deemed to be the principal of his tenant merely because of the landlord-tenant relationship[.]" *Stephenson v. Warner*, 581 P.2d 567, 568 (Utah 1978). Furthermore, a landlord is "not responsible for the tenant's torts, nor for the tenant's failure to keep the premises reasonably safe and in good repair." *Id.* "On the contrary, . . . it is the tenant who is liable for any dangerous condition on the premises which he creates or permits to come into existence after he has taken possession." *Id.* at 568–69. Thus, while there is a general duty for a landlord to exercise reasonable care over areas in which it has retained control, *see MacFarlane v. Applebee's Rest.*, 2016 UT App 158, ¶ 21, 378 P.3d 1286 (explaining that a lessor was not a possessor of land in relation to a parking lot because the landlord retained the responsibility to maintain common areas in the lease agreement), no general duty exists for a lessor to control a lessee.

¶28   Much was made at trial about the condition of the fence and whether the fence was in disrepair before or after Warm Creek took possession of the land. Liley essentially argued that because the fence had not been maintained in years, a dangerous condition existed on the land prior to Warm Creek taking possession of the land and that Cedar Springs had a duty to repair the fence. However, a derelict fence on rural property is

not itself a dangerous condition. And here, the allegedly dangerous condition that Liley relies on—the potential for cattle to escape through an unrepaired fence—did not exist when the leasehold was delivered; Warm Creek created the dangerous condition when it brought livestock to the property. In any event, whether the fence was broken before or after Warm Creek took possession of the land is not pertinent to the basis upon which the trial court allowed the case to proceed—that a landlord has a duty to control its tenant.

¶29　Further, as discussed above in the analysis of summary judgment, Utah Code section 41-6a-407 does not impose liability upon a landlord who leases its property to a tenant who in turn grazes cattle on the property. *Supra* Part I. Insofar as the court's ruling on directed verdict can be read as an extension of a duty based on section 41-6a-407, we reject that reasoning for the same reasons stated above.

¶30　Liley asserts, while rearticulating what he believes is the question presented for our review, that Cedar Springs' issue statement "should read: Did the district court err by finding that the question of [Cedar Springs'] duty to ensure that cattle on its property were properly fenced involved questions of fact for the jury to decide?" The question of whether a duty has been breached usually involves questions of fact. *See, e.g., Normandeau v. Hanson Equip., Inc.*, 2009 UT 44, ¶ 21 n.2, 215 P.3d 152 ("[W]hen there is a dispute about the foreseeability of an injury occurring, the questions relating to negligence and proximate cause are generally for the fact-trier, court or jury, to determine." (citation and internal quotation marks omitted)). But "appellate courts have consistently held that '[t]he determination of whether a legal duty exists falls to the court,'" *id.* ¶ 18 (alteration in original) (quoting *Yazd v. Woodside Homes Corp.*, 2006 UT 47, ¶ 14, 143 P.3d 283). Like his argument against summary judgment, this argument confirms the very error that Cedar

Springs argues on appeal—that the trial court erroneously denied its motion for a directed verdict.

¶31   We conclude that the trial court incorrectly determined that Cedar Springs owed a duty to control its tenant and thus owed a duty to Liley.

CONCLUSION

¶32   The trial court erred in its rulings on summary judgment and directed verdict. Liley failed to establish below that Cedar Springs owed him a duty under the law. Under the plain language of the statute, Cedar Springs did not have possession or control of the cow merely because it owns the land from which the cow wandered. Further, there is no general duty under the law for a landlord to use reasonable care in controlling its tenants, even where entities share a principal.

¶33   Reversed.

_____