2025 UT App 77

## THE UTAH COURT OF APPEALS

BONNIE PERAGALLO,
Appellant,
*v.*
W&T HOLDINGS LLC,
Appellee.

Opinion
No. 20240443-CA
Filed May 22, 2025

First District Court, Logan Department
The Honorable Spencer Walsh
No. 190100430

Peter R. Mifflin, Attorney for Appellant

Robert L. Janicki and Matthew A. Jones,
Attorneys for Appellee

JUDGE DAVID N. MORTENSEN authored this Opinion, in which
JUDGES RYAN M. HARRIS and RYAN D. TENNEY concurred.

MORTENSEN, Judge:

¶1     Bonnie Peragallo slipped and fell while walking along an icy sidewalk. W&T Holdings LLC (W&T) was the owner and landlord of the premises, which were leased to a third party. Peragallo brought a tort action against W&T alone. W&T in turn filed a motion for summary judgment, asserting that it owed no duty to Peragallo as it was not the possessor of the property at the time of the incident. The district court agreed and granted summary judgment. We affirm that grant.

BACKGROUND

¶2     W&T owns a building located at 1000 South and 100 West in Smithfield, Utah. In 2009, W&T began leasing the building and its parking lot to a tenant—Paragon Medical Inc. (Paragon)—under a lease agreement (the Lease Agreement). Under the Lease Agreement, W&T agreed to lease to Paragon "certain real property situated in Cache County, State of Utah, and which is more fully described as the property located at 1000S 100W, Smithfield, Utah consisting of a 55,015 square foot building, together with any and all improvements, fixtures, and other property presently located on said real estate," including the parking lot to the building (the Premises).

¶3     Paragraph 10 of the Lease Agreement provides,

> Tenant upon the full and faithful performance of all conditions, covenants, and agreements herein contained, shall at all times during the term hereof peaceably and quietly enjoy the use of the Premises without any disturbance from Landlord or anyone else claiming by or through Landlord, subject, however to any rights which may be reserved to Landlord herein and to all encumbrances to which [the Lease] Agreement may be subordinate, if any.

¶4     Paragraph 7 of the Lease Agreement provides,

> Tenant agrees that Landlord or its agents shall have the right to enter the Premises at any reasonable time, but with at least one day's prior notice, including therein the identity of the persons intending to enter the Premises, in order to examine the Premises, show the Premises to prospective purchasers or tenants, or make such repairs, alterations or improvements as Landlord may deem necessary or desirable.

¶5    Paragraph 11 of the Lease Agreement provides,

> Tenant agrees to maintain and keep all portions of the Premises in good order and repair and in a reasonably clean and maintained condition. Such ordinary maintenance and repairs shall be made at Tenant's sole expense and shall include, without limitation, all ordinary maintenance. Such maintenance shall be made by Tenant promptly as and when necessary. Upon the termination or expiration of the [Lease] Agreement in any manner, Tenant agrees to surrender and yield the Premises to Landlord in the same condition of repair, cleanliness and sightliness as at the date of execution of [the Lease] Agreement, loss by fire or other casualty and reasonable wear and tear excepted. If Tenant shall fail to maintain the Premises as herein provided, Landlord may cause such maintenance to be made, and the cost thereof shall be paid from the deposit. If the costs exceed the deposit, Tenant agrees to pay the excess. All extraordinary maintenance and repair, as well as structural repairs and other defects of the Premises not caused by the use of the Premises by Tenant, shall be the responsibility of Landlord.

¶6    A representative of W&T submitted a declaration explaining that the "responsibility to maintain" the Premises assigned to Paragon in paragraph 11 "includes snow removal and keeping the parking lots and sidewalk areas free from ice and other potentially slippery substances." Furthermore, he declared that "Paragon has been maintaining the parking lot and sidewalk areas around the Premises since it retained possession of the [Premises], including removing snow and ice from the parking lot."

¶7 In January 2018, Peragallo was walking outside the building because her employer had assigned her to work in the building for Paragon. As she walked along the north end of the Premises, she slipped and fell on some ice that had formed on the sidewalk.

¶8 Peragallo brought a negligence claim against W&T for personal injuries. At the close of fact discovery, W&T filed a motion for summary judgment. The motion sought dismissal of Peragallo's claim of negligence on the grounds that she could not establish a duty on the part of W&T. The district court granted W&T's motion and dismissed Peragallo's claim.

ISSUE AND STANDARD OF REVIEW

¶9 Peragallo appeals, arguing that the district court erred when it granted W&T's motion for summary judgment because W&T owed Peragallo a "non-delegable duty of care." "The grant or denial of summary judgment presents a question of law and is reviewed for correctness." *Liley v. Cedar Springs Ranch Inc.*, 2017 UT App 166, ¶ 11, 405 P.3d 817; *see also Wood v. Salt Lake City Corp.*, 2016 UT App 112, ¶ 8, 374 P.3d 1080 ("Whether a duty exists is a question of law which we review for correctness." (cleaned up)).

ANALYSIS

¶10 Peragallo's argument assumes the question at issue is whether W&T could delegate its "non-delegable duty" via the Lease Agreement. But the crux of the district court's grant of summary judgment and the issue before this court is whether, under the circumstances presented here, W&T owed Peragallo any duty at all.

¶11 "The duty of care that possessors of land in Utah owe to invitees upon their property is set forth in sections 343 and 343A

of the Second Restatement of Torts." *Hale v. Beckstead*, 2005 UT 24, ¶ 7, 116 P.3d 263. Section 343 states,

> A *possessor of land* is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he (a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and (b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and (c) fails to exercise reasonable care to protect them against the danger.

Restatement (Second) of Torts § 343 (Am. L. Inst. 1965) (emphasis added).

¶12 Importantly, the Restatement establishes a duty on the part of *possessors*, not landowners. The Restatement further defines a possessor of land as someone who "is in occupation of the land with intent to control it," someone who "has been in occupation of land with intent to control it, if no other person has subsequently occupied it with intent to control it," or someone "who is entitled to immediate occupation of the land, if no other person" qualifies under the first two definitions. *Id.* § 328E. "Thus, under the Restatement, control stemming from actual occupation, or from an immediate entitlement to actual occupation, is the hallmark of possessor status." *Hill v. Superior Prop. Mgmt. Services, Inc.*, 2013 UT 60, ¶ 22, 321 P.3d 1054 (cleaned up); *see also English v. Kienke*, 848 P.2d 153, 156 (Utah 1993) (identifying a possessor as one who is "in actual physical possession" of property); *Stevens v. Colorado Fuel & Iron*, 469 P.2d 3, 5 (Utah 1970) (identifying a possessor as one who is in "occupation of the land with intent to control it"). What's important in establishing who owes a duty as a possessor of land is identifying who occupies and controls that property.

¶13 Here, Peragallo does not dispute that Paragon occupied the Premises at the time of the incident. The district court was correct in reasoning that "W&T did not have . . . actual occupation of" the Premises, and this was important to its conclusion that W&T "did not have the requisite possession of the Premises to create a duty of care which is necessary for a claim of negligence."

¶14 When it comes to who controls the property, this court demonstrated the proper analysis in *MacFarlane v. Applebee's Restaurant*, 2016 UT App 158, 378 P.3d 1286. There, a restaurant was renting a building and parking lot from a landowner. *Id.* ¶ 2. While the parking lot was included as a part of the leased premises, the restaurant's control of the parking lot was significantly hampered by the lease agreement. *Id.* For example, the lease made clear that the restaurant's use of the parking lot was nonexclusive and subject to "several existing covenants and cross-easements that encumbered the property." *Id.* The restaurant also had no "responsibility or authorization for general maintenance, including snow removal." *Id.* ¶ 19. We concluded that "the lease defines the restaurant's entire relationship to the parking lot as subordinate to the role and authority of the landlord." *Id*. (cleaned up).

¶15 Given the terms of the lease agreement there, we concluded that, with regard to the parking lot, the restaurant lacked the "core capacities of control required of a possessor of land." *Id.* (cleaned up). In particular, we highlighted two core capacities that mark a possessor of land's plenary control over a property and that the restaurant did not have: "the right to exclude others from the property altogether" and "the right to take all necessary precautions and make necessary repairs." *Id.* ¶ 13 (cleaned up).

¶16 Unlike in *MacFarlane*, Paragon's relationship to the Premises was not "subordinate to the role and authority of" a landlord. *See id*. ¶ 19. Here, the district court correctly determined

that W&T was not a possessor of the leased premises, in part because "W&T did not have substantial control of the Premises." The fact that Paragon, rather than W&T, had plenary control of the Premises is demonstrated by the two core capacities described in *MacFarlane*.

¶17    First, Paragon had the exclusive right to occupy the Premises, including the parking lot and sidewalks:

> Tenant upon the full and faithful performance of all conditions, covenants, and agreements herein contained, shall at all times during the term hereof peaceably and quietly enjoy the use of the Premises without any disturbance from Landlord or anyone else claiming by or through Landlord, subject, however to any rights which may be reserved to Landlord herein and to all encumbrances to which [the Lease] Agreement may be subordinate, if any.

Unlike in *MacFarlane*, there were no reservations or encumbrances in the Lease Agreement that subordinated Paragon's control to that of W&T. Importantly, Paragon had the power to limit its liability by excluding people from the Premises, and nothing in the Lease Agreement took that power away from Paragon the way the lease did with regard to the parking lot in *MacFarlane*. And nothing in the Lease Agreement makes any distinction between different parts of the Premises. The sidewalk here is not distinguished from the rest of the Premises in the way that the parking lot was in *MacFarlane*.

¶18    Second, Paragon had the right and responsibility to maintain the Premises:

> Tenant agrees to maintain and keep all portions of the Premises in good order and repair and in a reasonably clean and maintained condition. Such ordinary maintenance and repairs shall be made at

Tenant's sole expense and shall include, without limitation, all ordinary maintenance. Such maintenance shall be made by Tenant promptly as and when necessary.

Thus, unlike in *MacFarlane*, Paragon had the responsibility and, more importantly, the authorization for general maintenance, including snow removal.

¶19 The restaurant in *MacFarlane* owed no duty to the plaintiff because it did not have the "plenary authority to engage in whatever measures it might deem necessary to prevent harm to those who visit" the parking lot. *Id.* ¶ 16 (cleaned up). Here, Paragon had that authority with respect to the Premises, and the Lease Agreement didn't limit that authority. Indeed, Paragon expressly agreed it would take on maintenance responsibility. Further, while Paragon possesses the express authority absent in *MacFarlane*, W&T's authority to control the Premises was limited, in at least one sense. Paragraph 7 of the Lease Agreement states, "Landlord or its agents shall have the right to enter the Premises at any reasonable time, but *with at least one day's prior notice . . . .*" (Emphasis added.) Thus, W&T's ability to enter the Premises and make repairs was limited by this one-day-notice requirement. Were we to pronounce W&T the possessor under the Lease Agreement, we can easily envision situations where W&T would be unable to engage in measures "necessary to prevent harm" by conditions that emerge and present a risk in less than one day (like ice). *See id.* (cleaned up). Thus, not only does the second core capacity of maintaining the property establish that Paragon is the possessor here, it also establishes that W&T cannot be the possessor.

¶20 Under Utah case law, to qualify as a possessor, a person must exercise control over a property and "the degree of control [must] be substantial." *Hill v. Superior Prop. Mgmt. Services, Inc.*, 2013 UT 60, ¶ 23, 321 P.3d 1054. Substantial control is established

by demonstrating, among other rights, the right to exclude others from the property and the right to take necessary precautions and make necessary repairs. *Id.* ¶ 24 ("A person who has the control of a landowner in actual occupation of property has both the rights and the corresponding abilities to deal with the property as he sees fit. Among these are (a) the right to exclude others from the property altogether and (b) the right to take all necessary precautions and make necessary repairs." (cleaned up)). Though this list is non-exclusive and Utah courts "have not yet articulated a comprehensive definition of 'possessor,'" it's clear that a possessor must have substantial control. *Id.* ¶ 23. Peragallo has not argued that W&T possessed either of the core capacities discussed in our case law, and she has not made any other persuasive claims about how W&T exercised substantial control of the Premises.

¶21 Peragallo suggests that because W&T retained some minimal ability to control the Premises, it qualified as a possessor. This argument is premised on paragraph 11 of the Lease Agreement, which states, "If Tenant shall fail to maintain the Premises as herein provided, Landlord may cause such maintenance to be made, and the cost thereof shall be paid from the deposit." In addition to the one-day-notice issue identified above, this argument otherwise fails to appreciate that in Utah a possessor must exercise substantial control over a property. *See id.*

¶22 Substantial control is not established under the circumstances presented here, where Paragon was given the right to peaceably and quietly enjoy the use of the Premises without disturbance from W&T; where Paragon agreed to assume ongoing maintenance responsibilities, including snow removal; and where W&T retained only a boilerplate ability to enter the Premises—after giving at least one day's notice—for the purposes of inspection or repair. In this situation, W&T simply did not have the rights or abilities necessary to protect invitees and limit its liability. *See id.* ¶¶ 25–26.

¶23    This conclusion is consistent with jurisdictions across the country, which have held that landlords do not take on a duty to invitees when their lease contains merely a typical reservation of the right to enter and make repairs. *See, e.g.*, *Boles v. White*, 2021 ME 49, ¶ 11, 260 A.3d 697 ("[A] landlord's mere reservation of the right to enter and repair the premises [is] insufficient evidence of that landlord's control for purposes of liability."); *Lucier v. Impact Recreation, Ltd.*, 864 A.2d 635, 640 (R.I. 2005) (per curiam) (stating that "[t]he lease provisions," including the landlord's right to enter the premises to determine whether it was in good condition, "did not give [the landlord] control over the property, but rather were merely to protect [the landlord's] investment and reversionary interest in the property"); *Settles v. Redstone Dev. Corp.*, 797 A.2d 692, 696 (D.C. 2002) (stating that "a landlord has retained sufficient control to create a duty to repair if he has the power or authority to manage, superintend, direct or oversee," but that "the landlord's explicit reservation of the authority to enter the premises and to make repairs is insufficient to constitute retention of control" (cleaned up)); *Dubay v. Cambridge Housing Auth.*, 225 N.E.2d 374, 375 (Mass. 1967) ("The reservation of the right to enter the tenant's premises to make repairs . . . did not put the lessor in control of the premises . . . ." (cleaned up)); *Webb v. Danforth*, 505 S.E.2d 860, 861 (Ga. Ct. App. 1998) ("A landlord's retention of the right to enter, inspect and repair is not inconsistent with a full surrender of possession to the tenant.").

¶24    W&T did not occupy the Premises and did not have substantial control of the Premises. Thus, W&T was not the possessor of the land when Peragallo slipped and fell.

¶25    In an attempt to avoid this conclusion, Peragallo argues that "[a]ll owners" are "possessors." In saying this, Peragallo sacrifices legal accuracy for simplicity. In fact, not all landowners are possessors, and not all possessors are landowners. Here, Peragallo confuses mere factual correlation for a legal standard. To support her argument that "owners of real property

categorically qualify as possessors of land," Peragallo directs our attention to "cases that treat landowners and possessors synonymously." Because landowners are often in control of property they own, there will of course be cases where a landowner also happens to be the possessor of the land, but that does not support the conclusion that all landowners are possessors. Being a landowner is neither necessary nor sufficient for being a possessor of land.

¶26    To further support her argument, Peragallo cites *Rodriguez v. Kroger Co.*, 2018 UT 25, 422 P.3d 815, which states that "the owner of a premises has a nondelegable duty to keep her premises reasonably safe for business invitees." *Id.* ¶ 14. On its face, the language used in *Rodriguez* and cases like it may appear to support Peragallo's argument. But here again, this support is based on the frequent correlation between land ownership and possessorship, and nothing more. As the United States District Court for the District of Utah aptly explained, "*Rodriguez v. Kroger Co.* is materially distinguishable from this case because Kroger was not only the owner but also the possessor of the grocery store where the plaintiff slipped and hurt herself, and the plaintiff was the grocery store's invitee. In contrast, [the plaintiff here] was not an invitee of [the landowner], and [the landowner] was not in possession of the land when [the plaintiff's injury] occurred." *See Goodridge v. Diamond Ranch Academy, Inc.*, No. 22-CV-000102, 2025 WL 50242, at *3 (D. Utah Jan. 8, 2025) (cleaned up).

¶27    There are some instances in which the law imposes a duty on a landlord. *See Liley v. Cedar Springs Ranch Inc.*, 2017 UT App 166, ¶ 26, 405 P.3d 817. For example, the "law generally imposes a duty on a landlord to tenants and third parties for portions of property over which it maintains possession or control, such as common areas, that pose a danger." *Id.* But outside a few narrow exceptions, a landlord who is not also a possessor "is under no obligation to make repairs, even where the property becomes hazardous." *Id.*

¶28 Our supreme court has explicitly stated that a landlord is "not responsible for the tenant's torts, nor for the tenant's failure to keep the premises reasonably safe and in good repair." *Stephenson v. Warner*, 581 P.2d 567, 568 (Utah 1978). "On the contrary, . . . it is the tenant who is liable for any dangerous condition on the premises which he creates or permits to come into existence after he has taken possession." *Id.* at 568–69.

¶29 In a premises liability case, the critical inquiry is not identifying who owns the land but determining who qualifies as the possessor of the property. Who the possessor of land is turns on who occupies and controls that land. To have sufficient control over the property to qualify as a possessor, a person or entity must have certain rights, like the right to exclude others from the property and the right to make necessary repairs. In this case, W&T neither occupied nor controlled the Premises, and thus, it doesn't matter whether it was the landowner because it was not the possessor.

CONCLUSION

¶30 Because W&T was not the possessor of the Premises when Peragallo slipped and fell, it owed her no duty of care under the facts of this case. Accordingly, the district court correctly entered summary judgment.

¶31 Affirmed.

———————