John Patten *vs.* Fred Bartlett.

Aroostook.   Opinion January 31, 1914.

*Contributory Negligence.   Damages.   Due Care.   Injury.   Negligence. Tenant.   Unguarded Excavation.*

Action for damages for the loss of a horse which was killed by falling into an excavation made by defendant for a cesspool on property owned by the defendant but occupied by a tenant.   At the time of the accident, the plaintiff went upon the premises for the purpose of delivering a load of wood to the tenant.

*Held:*

1. That a licensee is a person who is neither a passenger, servant nor trespasser, and not standing in any contractural relation with the owner of the premises, and is permitted to go upon the premises for his own interests, convenience or gratification.

2. It is well settled that to come under an implied invitation as distinguished from a mere licensee, the visitor must come for a purpose connected with the business in which the owner or occupant is engaged, or which he permits to be carried on there.

3. The owner or occupant of land, who by invitation expressed or implied induces or leads another to come upon his premises for any lawful purpose, is liable in damages to such persons, they using due care, for injuries occasioned by the unsafe condition of the land or its approaches, if such condition was known to him and not to them and was negligently suffered to exist without timely notice to the public, or to those who were likely to act upon such invitation.

4. If when let, the premises are in a condition which is dangerous to the public, or with a nuisance upon them, the landlord may be liable to strangers for injuries resulting therefrom.

5. By letting the premises in such condition and receiving rent therefor, he is considered as authorizing the continuance of the nuisance.

6. Whenever an owner is bound to repair his building, and has control of it sufficient for that purpose, he, and not the tenants, is liable to third persons for damages arising from a neglect to repair.

7. It is a sound rule of law that it is not contributory negligence not to look out for danger when there is no reason to apprehend any.

On report.   Judgment for the plaintiff.   Damages assessed at $150.

This is an action on the case to recover damages of the defendant as owner of a house lot situate in Littleton, in said County of Aroostook, for the loss of a horse, owned by the plaintiff, in the evening of December 29, 1911. The plaintiff, a truckman, on said day was delivering a load of wood to a tenant of the plaintiff in said premises, when said horse fell into an excavation made by the defendant for a cesspool, and was killed. Plea, general issue.

At the conclusion of the evidence for the plaintiff, by agreement of the parties, this case was withdrawn from the jury and reported to the Law Court for decision. Upon so much of the evidence as is legally admissible, the court is to render such judgment as the legal rights of the parties require. And it is further agreed that if the Law Court decides from the evidence that the defendant is liable, damages shall be assessed for the plaintiff in the sum of one hundred and fifty dollars and interest from the date of the writ.

The case is stated in the opinion.

*Powers & Archibald,* for plaintiff.

*Hersey & Barnes,* for defendant.

SITTING: SAVAGE, C. J., SPEAR, CORNISH, KING, BIRD, HANSON, PHILBROOK, JJ.

PHILBROOK, J. The plaintiff is a general truckman, residing and doing business at Houlton. The defendant owns a house and lot in the same town, occupied by J. Aubrey Henderson, a tenant at will. Before the occupancy of the premises by Henderson the defendant had moved the barn from its former location on the lot to a position in line with the house and ell, so that the entire line of buildings extended easterly from the street and the back end of the barn was nearly contiguous to the easterly line of the lot. Southerly from the barn, in its new location, and very near the easterly line of the lot, before the occupancy of the premises by Henderson, the defendant had made an excavation in the ground for a cesspool and had provided no covering for it, nor had any fence been erected around it, nor other barrier provided to warn any person of its location and to prevent accident by reason of its existence. According to one witness, who claimed to have made some measurements, the cesspool, or excavation, ran two feet back of the outer edge of the slip

or bridge which afforded entrance to the barn, and extended six feet out into the driveway. He also testified that the distance from the edge of the slip to the edge of the cesspool was about a foot. This excavation became filled with water, the water became frozen, and upon this frozen water and upon the adjacent soil snow had fallen to the depth of about five inches, according to the testimony of the plaintiff, thus concealing the existence of the excavation.

About six o'clock in the afternoon of December 29th, 1911, while the premises were thus occupied by Henderson, the plaintiff went there with his truck team for the purpose of delivering a load of wood to Henderson. He drove into the door yard, stopped his team, and began to unload the wood but, on being told by the wife of the tenant that she wanted the wood unloaded nearer the barn, he led his horse toward the easterly line of the lot, whereupon he and his horse fell into the cesspool from which he escaped but the horse was killed.

This action was brought to recover the damages sustained by the loss of the horse. The defendant introduced no testimony, but at the conclusion of the evidence offered by the plaintiff the case was withdrawn from the jury, by agreement, and reported to this court, with a stipulation that if the defendant were liable damages should be assessed for the plaintiff in the sum of one hundred and fifty dollars and interest from the date of the writ.

The defendant urges that the plaintiff has not only failed to prove due care affirmatively but that the evidence conclusively establishes his contributory negligence. This is a question of fact to be determined from all the evidence in the case. The plaintiff had been upon the premises before the barn had been moved or the cesspool dug. He was somewhat familiar with conditions existing there before either of these things had been done. Would it be claimed that on the 29th of December he should expect to find a dangerous and unguarded excavation like that which was there? "It is a sound rule of law that it is not contributory negligence not to look out for danger when there is no reason to apprehend any." *Engell* v. *Smith,* 82 Mich., 1; 21 Am. St. Rep., 549; Beach on Negligence, 41; *Christopher* v. *Russel,* 58 So. Rep., 45. The plaintiff went upon the premises at the close of a winter day when early darkness had rendered objects somewhat obscure but when there

was sufficient light to enable out door work like that he was doing to be easily performed without a lantern. He did not call for a lantern. None was necessary if the premises contained no hidden pitfall. It is true that the wife of the tenant spoke to him saying "when you go near the corner of the platform be sure and turn out in the field," but her directions did not arouse any reason in his mind to apprehend or look for the danger which was in his path, and she testifies that "the cesspool didn't come into my mind at the time," meaning the time when the plaintiff came to deliver the wood. Obviously there was nothing in this incident which would cause the plaintiff to be charged with lack of due care or contributory negligence. We have examined all the evidence carefully, and while it is always easy to say what should have been done after knowledge has been gained by painful experience, we are inclined to the belief that this plaintiff, on that late December afternoon, did what any ordinarily prudent man would have done under similar circumstances and while engaged in such an enterprise.

Was the plaintiff on the premises as a tresspasser, or as a mere licensee, or was he there by invitation, express or implied? The correct answer to this inquiry will assist in determining the question of liability for the damages which he sustained. Plainly he was not there as a trespasser. "A licensee is a person who is neither a passenger, servant, nor trespasser, and not standing in any contractual relation with the owner of the premises, and is permitted to come upon the premises for his own interest, convenience, or gratification." 29 Cyc., 451 and cases there cited. "It is well settled, that to come under an implied invitation, as distinguished from a mere licensee, the visitor must come for a purpose connected with the business in which the owner or occupant is engaged, or which he permits to be carried on there. There must at least be some mutuality of interest in the subject to which the visitor's business relates." *Plummer* v. *Dill,* 156 Mass., 426. In *Dixon* v. *Swift,* 98 Maine, 207, our court declared that if the plaintiff had been on the premises upon business of the defendant he would have been there by implied invitation. In the case at bar the premises were occupied as a tenement. The tenant must have fuel. He had purchased fuel, which was being delivered to him on the

premises by the plaintiff. These circumstances warrant us in say-
ing that the plaintiff was on the premises by implied invitation.

Being so there what rules of law may he invoke for his protection.
The defendant says that there was no passage way, or way of any
description, across, over or near the lot which would invite this
plaintiff to be in the position in which he suffered the damage. He
says that any one lawfully on the premises, passing to the house
door, or to any doors of other buildings, would not pass any where
near the excavation. He says that men going into the barn would
travel the entire length of the whole line of buildings and come to a
platform leading into the barn, and that beyond the platform was
the cesspool. He argues that under these circumstances the owner
or occupant was under no duty to the plaintiff in the matter of
protection from injury except to avoid wanton injury or the setting
of a trap. But the evidence is uncontradicted that the plaintiff
entered these premises lawfully, in the discharge of business which
had "mutuality of interest" between himself and the occupant, and
while pursuing the ordinary, customary and natural route which
would be pursued by one so coming on the premises, and which
must be necessarily pursued if the wood were to be delivered near
the barn door where the tenant wanted it, he inevitably came to
the position on the premises made dangerous by this unguarded
cesspool, and without fault on his part, as we have seen, suffered
the accident for which he now asks payment in damages. Under
such circumstances this rule of liability is well settled: "The owner
or occupant of land, who by invitation express or implied induces
or leads another to come upon his premises for any lawful purpose,
is liable in damages to such persons, they using due care, for inju-
ries occasioned by the unsafe condition of the land or its approaches,
if such condition was known to him and not to them, and was
negligently suffered to exist without timely notice to the public or
to those who were likely to act upon such invitation." *Moore* v.
*Stetson,* 96 Maine, 197; *Barrett* v. *Black,* 56 Maine, 498. The case
at bar has every element necessary to bring it within the rule of
law just stated.

That the plaintiff sustained an injury no one denies. That he
was not guilty of contributory negligence we are well satisfied.
Was the defendant, who constructed the cesspool, left it in a dan-

gerous condition, suffered it to so exist, promised to repair it before the tenant began his occupancy, repeatedly promised to repair it after the tenant began his occupancy, and did as a matter of fact repair it after the accident, was he guilty of negligence and shall he be required to pay the damages, or shall we declare the fault to rest upon the shoulders of the tenant who did not create the defect, and who relied upon the landlord to keep good his promise to repair.

The defendant urges several reasons why he is not answerable in damages to the plaintiff and among them he invokes the rule that one who visits a dwelling house on the express or implied invitation of the tenant at will cannot be deemed as present therein on the implied invitation of the landlord, and if he suffer damages there by some defect in the premises he must seek his remedy against the person on whose implied invitation he came upon the premises. In support of the rule he cites *McKenzie* v. *Cheetham,* 83 Maine, 543. Under the circumstances of that case this rule is true, but it is not without its exceptions, and the McKenzie case distinctly recognizes an exception when the court says on page 550 of the reported case, "If when let, the premises are in a condition which is dangerous to the public, or with a nuisance upon them, the landlord may be liable to strangers for injuries resulting therefrom; for by the letting of them in that condition and receiving rent therefor he is considered as authorizing the continuance of the nuisance." In a very recent case decided by the Massachusetts court, *Cerchione* v. *Hunnewell et al,* 102 N. E. Rep., 908, the court says, "when there is a lease of premises on which a nuisance exists *or such condition as plainly will lead to the creation of a nuisance,* and a surrender of control is made to the tenant *without* any express agreement touching the nuisance, then the landlord may be found to have contemplated the continuance of the illegal or dangerous condition by the tenant and may be held responsible for damages resulting therefrom." The liability of the landlord in that case even *without* promise to repair is to be noted. In the case at bar the promise to repair exists. Our own court has said in *Smith* v. *Preston,* 104 Maine, 156; "whenever an owner is bound to repair his building, and has control of it sufficient for that purpose, he, and not the tenants, is liable to a third person for damages arising

from a neglect to repair. Such liability rests upon the elementary principle that the party whose neglect of duty causes the damages is responsible therefor." In the case from which we just quote the fact was established that the defect which caused the injury was under the general care of the defendant, and that he had such control of the premises as was necessary to keep them in proper and safe condition. In the case at bar we regard the fact as established that this defendant assumed and retained the care of the premises to the extent of completing necessary work on this cesspool, as shown by his promises to repair made before and during the occupancy by the tenant, and by the further fact that he came upon the premises after the accident and made repairs. It should be noticed that in *McKenzie* v. *Cheetham,* supra, the landlord made no such promise to repair, and retained no control over the leased premises for that or any other reason.

The cesspool existed upon the premises when let. There were such conditions as would plainly "lead to the creation of a nuisance," *Cerchione* v. *Hunnewell,* supra, and for those reasons, and for other reasons already stated, we determine that the defendant is liable, and accordingly assess damages for the plaintiff in the sum of one hundred fifty dollars and interest from the date of the writ.

*So ordered.*