MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:    2021 ME  49
Docket:      Cum-20-319
Argued:      July 13, 2021
Decided:     October 7, 2021

Panel:       GORMAN, JABAR, HUMPHREY, HORTON, and CONNORS, JJ.*

CECELIA BOLES

v.

KAREN M. WHITE et al.

HUMPHREY, J.

[¶1]  Cecelia Boles was a guest of tenants who rented a two-story house owned by Karen and Ronald White.  Boles appeals from a summary judgment entered by the Superior Court (Cumberland County, *Stewart, J.*) in favor of the Whites on Boles's complaint alleging premises liability.  Boles argues that the court erred when it concluded that the tenants were in exclusive control of the premises, that the Whites did not expressly agree to maintain the premises in good repair, and that there was no alternative basis for finding the Whites liable for Boles's injury.  We affirm the judgment in all respects.

---

* Justice Mead sat at oral argument but did not participate in the development of the opinion.

## I. BACKGROUND

[¶2]　The following facts are drawn from the parties' supported statements of material facts, viewed in the light most favorable to Boles. *See MSR Recycling, LLC v. Weeks & Hutchins, LLC*, 2019 ME 125, ¶ 6, 214 A.3d 1.

[¶3]　Cecelia Boles was injured on September 18, 2016, at the house rented by her daughter and son-in-law (the Lytles) when she descended the staircase between the first and second floor and fell off the landing at the bottom of the staircase.[1] The height of the landing step measured eleven inches, which was greater than the heights of the rest of the stairs of the staircase[2] and did not comply with the applicable building codes.　The Lytles had recently entered into a written agreement to rent the house from the Whites.　The lease included the following paragraphs that are relevant to this appeal:

> **10.**　Access:　Renters shall allow homeowner to access the property for purposes of repair and inspection.　Renters shall keep the owners informed of any issues that arise with the property and/or appliances.

> **12.**　The renter is responsible for mowing the lawn and watering the plants.　The renter is responsible for all snow removal, either snow blowing with the machine available; or arranging plowing.

---

[1] Boles had arrived at the premises the prior afternoon to babysit her grandchildren and had never visited the premises before.　Boles awoke the next morning at approximately 5:00 a.m. and ascended the staircase for the first time to look for her son-in-law.　Thereafter, while descending the stairs, Boles fell as she stepped off the landing onto the first floor.

[2] The record does not reflect how much higher the landing step was than the other steps.

The renter is responsible for salting or sanding walkways if necessary to prevent personal injuries from slipping on ice.

[¶4]  On June 24, 2019, Boles brought suit against the Whites on the theory of premises liability for injuries she sustained as a result of the fall.  On June 26, 2020, the Whites moved for summary judgment on all counts of the complaint, contending that Boles could not establish that the Whites owed Boles a duty of care.  The court granted the Whites' motion, concluding that there was no genuine dispute that the Lytles were in exclusive control of the premises, that the lease did not contain an express agreement requiring the Whites to maintain the premises in good repair, and that the Whites did not otherwise have a duty to maintain the premises.

[¶5]  Boles timely filed this appeal.  *See* 14 M.R.S. § 1851 (2021); M.R. App. P. 2A, 2B(c)(1).

## II.  DISCUSSION

[¶6]  "We review a grant of summary judgment de novo, considering the evidence in the light most favorable to the nonprevailing party to determine whether the parties' statements of material facts and the record evidence to which the statements refer demonstrate that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Kurtz & Perry, P.A. v. Emerson,* 2010 ME 107, ¶ 15, 8 A.3d 677 (quotation marks

omitted); *see also* M.R. Civ. P. 56(c). "A material fact is one that can affect the outcome of the case, and there is a 'genuine issue' when there is sufficient evidence for a fact-finder to choose between competing versions of the fact." *Stewart-Dore v. Webber Hosp. Ass'n*, 2011 ME 26, ¶ 8, 13 A.3d 773.

[¶7] A landlord is not liable for injuries caused by a dangerous condition on property that is under a tenant's exclusive control except when the landlord "(a) fails to disclose the existence of a latent defect which he knows or should have known existed but which is not known to the tenant nor discoverable by him in the exercise of reasonable care; (b) gratuitously undertakes to make repairs and does so negligently; or (c) expressly agrees to maintain the premises in good repair." *Nichols v. Marsden*, 483 A.2d 341, 343 (Me. 1984) (citations omitted). This rule and its exceptions apply to injuries sustained by a tenant's guest or others on the premises with the tenant's consent. *See Stewart v. Aldrich*, 2002 ME 16, ¶¶ 2, 6, 10-14, 788 A.2d 603 (applying *Nichols* and its exceptions where the injured plaintiff was a guest of the landlord's tenant). Finally, unambiguous contract language must be interpreted according to its plain meaning, and that interpretation is a question of law. *T-M Oil Co. v. Pasquale*, 388 A.2d 82, 85 (Me. 1978).

## A.     Exclusive Control

[¶8]  Boles argues that the court erred in concluding that the premises was under the exclusive control of the Lytles because the Whites reserved the right to access the premises "for purposes of repair and inspection" in paragraph ten of the lease.  Under *Nichols*, a landlord must first establish the landlord's "absence of control in order to avoid liability for a dangerous condition on the premises."  *Stewart*, 2002 ME 16, ¶ 12, 788 A.2d 603 (quotation marks omitted).  "Although we have not explicitly defined the term 'control,' the cases applying *Nichols* illustrate that [it] means a power over the premises that the landlord reserves pursuant to the terms of the lease or the tenancy, whether express or implied, and does not include the incidental control that comes from being able to threaten tenants with nonrenewal of a lease or with eviction." *Id.* ¶ 13. More specifically, "landlords may retain control over non-common areas when they reserve certain rights or responsibilities over the premises by the terms of the lease or tenancy." *Id.*

[¶9] Applying these principles, we vacated a summary judgment in favor of the defendant landlords after concluding that there was a genuine dispute of fact concerning the degree of control retained by the landlords because they reserved the right to enter the premises to plow snow from the parking lot and

6

did in fact plow snow "whenever necessary." *Hankard v. Beal*, 543 A.2d 1376, 1377-78 (Me. 1988). Similarly, we vacated a summary judgment in favor of the defendant landlord after concluding that there was a genuine dispute of fact concerning the degree of control retained by the landlord over the basement stairs because, although the stairs could be accessed only through the plaintiff's apartment, there was evidence that the lease did not include the basement or its stairs, that the plaintiffs accessed the stairs only at the landlord's behest, and that the landlord occasionally used the stairs to service the furnace in the basement. *Rodrigue v. Rodrigue*, 1997 ME 99, ¶¶ 4, 12-13 n.2, 694 A.2d 924; *see also Chiu v. City of Portland*, 2002 ME 8, ¶¶ 12-15, 788 A.2d 183 (reasoning that there was a genuine dispute as to whether the tenants had exclusive control over an exterior window because the landlord had previously repaired an adjacent exterior window, could have repaired the window without entering the residence, had been asked by the tenant to fix the windows at issue, and "did not disavow his obligation to repair" them).

[¶10] The question before us is whether, as a matter of law, the reservation of access in paragraph ten of the lease for purposes of "inspection and repair," without more, creates a genuine dispute as to whether the Lytles had exclusive control over the premises, including the interior staircase. We

conclude that it does not create such a dispute. The Whites' general reservation of access for purposes of repair and inspection is distinct from the landlords' degree of control disputed in *Hankard*, *Rodrigue*, and *Chiu*. In those cases, there was at least some evidence of shared control in each case between the landlord and tenants—those landlords had actually exercised some form of control, whether reserved or not, over the portion of the premises at issue during the tenancy. *See Hankard*, 543 A.2d at 1377-78 (landlords reserved the right to plow and did plow snow on parking lot over which control was disputed); *Rodrigue*, 1997 ME 99, ¶ 12 n.2, 694 A.2d 924 (landlord did not clearly include in the lease the stairs over which control was disputed and used those same stairs during the lessee's tenancy); *Chiu*, 2002 ME 8, ¶ 14, 788 A.2d 183 (landlord previously repaired windows over which control was disputed).[3]

[¶11] Our conclusion is consistent with decisions in other jurisdictions that have deemed a landlord's mere reservation of the right to enter and repair the premises insufficient evidence of that landlord's control for purposes of liability. *See e.g.*, *Lucier v. Impact Rec., Ltd.*, 864 A.2d 635, 640 (R.I. 2005) ("The

---

[3] Even viewing the landlords' reservation of access in *Hankard* in isolation, paragraph ten remains distinguishable because the reservation in *Hankard* was not a general reservation of the right to enter for inspection and repair; rather, it was a reservation of the right to enter for the specific purpose of plowing snow. *Hankard*, 543 A.2d at 1377-78.

8

lease provisions," including the landlord's right to enter the premises to determine whether it was in good condition, "did not give [the landlord] control over the property, but rather were merely to protect [the landlord's] investment and reversionary interest in the property."); *Settles v. Redstone Dev. Corp.*, 797 A.2d 692, 696 (D.C. 2002) ("A landlord has retained sufficient control to create a duty to repair if he has the power or authority to manage, superintend, direct or oversee," but "the landlord's explicit reservation of the authority to enter the premises and to make repairs is insufficient to constitute retention of control.") (quotation marks omitted); *Dubay v. Cambridge Hous. Auth.*, 225 N.E.2d 374, 375 (Mass. 1967) ("The reservation of the right to enter the tenant's premises to make repairs . . . did not put the lessor in control of the premises.") (quotation marks omitted); *Webb v. Danforth,* 505 S.E.2d 860, 861 (Ga. Ct. App. 1998) ("A landlord's retention of the right to enter, inspect and repair is not inconsistent with a full surrender of possession to the tenant.").

[¶12]  Given the "bedrock principle" that a lease "is equivalent to a conveyance for almost all purposes," *Stewart*, 2002 ME 16, ¶ 14, 788 A.2d 603, and in the absence of evidence showing that the Whites had, in fact, retained or exercised any degree of control over any portion of the premises after renting

it to the Lytles, we conclude that the Lytles were in exclusive control of the premises.

## B.    Express Agreement to Maintain Premises

[¶13]  Boles argues that paragraphs ten and twelve, the latter of which enumerates the maintenance responsibilities of the Lytles as tenants, create a genuine dispute as to whether the Whites expressly agreed to maintain the premises in good repair.  Even if a tenant is in exclusive control of the premises, the third exception under *Nichols* provides that the landlord may still be liable for injuries sustained on the premises if the landlord "expressly agree[d] to maintain the premises in good repair."  *Nichols*, 483 A.2d at 343.

[¶14]  Boles contends that paragraph ten triggers this third exception because it constitutes "a written assurance" by the Whites to repair the property.  In *Nichols*, we vacated a summary judgment in favor of the defendant landlords because there was a genuine dispute of fact as to whether the landlords expressly promised to maintain the premises after one of the landlords testified that, prior to signing the lease, she orally informed the tenants that minor repairs would be the tenants' responsibility while major repairs would be handled by the landlords themselves.  *Id.* at 344.

10

[¶15]   Conversely, in *Saunders v. Picard*, we affirmed a summary judgment in favor of the defendant landlord, holding that "evidence that [the landlord] fixed the furnace, the water system, and the chimney, *without more*, will not support an inference that [the landlord] had expressly agreed to maintain the premises in good repair."   683 A.2d 501, 502 (Me. 1996) (emphasis added).  Further, with particular reference to the case before us, the rule imposing landlord liability when the landlord contracts to keep the premises in repair "has no application where the landlord . . . merely reserves the privilege to enter and make repairs if he sees fit to do so."  Restatement (Second) of Prop.: Landlord & Tenant § 17.5 cmt. b(1) (Am. Law Inst. 1977); *see also Givens v. Union Inv. Corp.*, 359 A.2d 40, 42 (R.I. 1976) ("The general rule . . . is that the inclusion in a lease of a provision reserving to the lessor the privilege to enter and to make repairs is commonly held not to obligate the lessor to make repairs.") (quotation marks and alteration omitted).

[¶16]   Thus, although the plain language of paragraph ten of the lease reserves a right of access to the Whites, as landlords, in the event that repairs are needed, it does not expressly require them to undertake any repairs nor does it, unlike the landlord's disputed oral commitment to make repairs in *Nichols*, provide any assurance that they will.

[¶17]  Boles also argues, based on the maxim *expressio unius est exclusio alterius*, that all repair obligations not enumerated in paragraph twelve of the lease fell to the Whites.  This maxim reflects a "well-settled" rule of construction useful for the interpretation of ambiguous language in statutes and other documents "that [the] express mention of one concept implies the exclusion of others not listed." *Musk v. Nelson*, 647 A.2d 1198, 1201-02 (Me. 1994) (applying the maxim to interpret a statute); *see also Stone v. U.S. Envelope Co.*, 119 Me. 394, 396-97, 111 A. 536 (1920) (applying the maxim to interpret corporate bylaws that lacked express provisions on the disputed issue).

[¶18]  However, the maxim has no application to language that is unambiguous, *see, e.g.*, *Young v. Greater Portland Transit Dist.*, 535 A.2d 417, 418 n.2 (Me. 1987) (declining to apply the *expressio unius* maxim to an unambiguous statute), and paragraph twelve of the lease is not ambiguous in any respect material to the Whites' obligations.  Indeed, any application of the maxim to interpret paragraph twelve, assuming its applicability, would mean only that any repairs not listed in paragraph twelve are excluded from the tenants' responsibilities—not that the Whites would be required to perform them.

[¶19]  We conclude that neither paragraph ten nor paragraph twelve of the lease contains an express agreement that the Whites will maintain the premises in good repair.[4]

## C.    Alternative Basis for Liability

[¶20]  In her opposition to the motion for summary judgment and now on appeal, Boles cites *Patten v. Bartlett*, 111 Me. 409, 89 A. 375 (1914), to argue that a landlord may be liable if he "rents a premises containing an unreasonably dangerous condition therein," and "fail[s] to remedy the danger before accepting tenants."  The Superior Court did not address this argument, and although *Patten* remains good law, we find that it has no application to the facts of this case and is easily distinguished.

[¶21]  In *Patten*, the plaintiff's horse was killed after it fell into an unmarked pit, which was concealed by ice and snow and which the defendant landlord had promised to repair before the tenant took occupancy.  111 Me. at 410-14, 89 A. 375.  Here, unlike in *Patten*, the Whites did not promise to repair the step, nor is the step the type of concealed "nuisance" that was contemplated

---

[4] Although Boles characterizes Karen White's deposition testimony about the Whites' interest in conditions identified in their house inspection as evidence that the Whites had agreed to maintain the premises in good repair upon renting it to the Lytles, the Whites' prior repairs and intentions to improve the house do not establish the existence of an agreement with the Lytles.

in *Patten*. *See id.* at 415, 89 A. 375. This latter distinction is consistent with the legal principle that a landlord is liable for injuries caused by a latent defect when that defect is "hidden from knowledge as well as from sight and one which could not be discovered by ordinary and reasonable care." *Cole v. Lord*, 160 Me. 223, 228, 202 A.2d 560 (1964) (quotation marks omitted); *see also Nichols*, 483 A.2d at 343.[5]

[¶22] Moreover, "no duty is owed to tenants to make *the structural design or plan* any more safe than it was at the time of letting." *Thompson v. Frankus*, 151 Me. 54, 56, 115 A.2d 718 (1955) (citing *Rosenberg v. Chapman Nat'l Bank*, 126 Me. 403, 405, 139 A. 82 (1927)); *see also Miller v. Hooper*, 119 Me. 527, 529, 112 A. 256 (1921) ("An owner may build a tenement house with stairways which because of steepness or for other obvious structural reasons are inconvenient or even unsafe. The tenant cannot exact any change. If such stairways need to be repaired or rebuilt, the owner is not required to make them safer or more convenient.").

---

[5] The first *Nichols* exception imposes liability upon a landlord when the landlord "fails to disclose the existence of a latent defect which he knows or should have known existed but which is not known to the tenant nor discoverable by him in the exercise of reasonable care." *Nichols v. Marsden*, 483 A.2d 341, 343 (Me. 1984). Although Boles's argument alleges liability under *Patten*, the concealed nature of the defect in *Patten* mirrors the latent defect exception, which, in addition to requiring that the latent defect be one that the landlord should have known of, also requires that the defect be one that is undiscoverable by the tenant. *Id*. We also note that the parties' statements of material facts do not contain an assertion that the Whites failed to warn the Lytles of any alleged defect.

The entry is:

Judgment affirmed.

---

Christian J. Lewis, Esq., and Sean V. Walton, Esq. (Orally), Hardy Wolf & Downing, P.A., Lewiston, for appellant Cecelia Boles

John B. Schulte, Esq. (Orally), and L. John Topchik, Esq., Law Offices of John B. Schulte, Portland, for Karen M. White and Ronald C. White Jr.

Cumberland County Superior Court docket number CV-2019-238
FOR CLERKS REFERENCE ONLY