STATE OF MAINE
CUMBERLAND, ss

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. CV-21-049


RICHARD DISNEY, et al.,

      Plaintiffs

v.

LZ ASSOCIATES, et al.,

      Defendants

ORDER ON MOTION FOR
SUMMARY JUDGMENT

Plaintiffs-Sheldon Tepler, Esq.
Defendant LZ Assoc-Thomas Marjerison, Esq.
Defendants Wingfoot and Goodyear-Kady Huff, Esq.

REC'D CUMB CLERKS OF
JUN 28 '23 AM11:10

Before the court is a motion for summary judgment filed by defendant LZ Associates on the first amended complaint of plaintiff Richard Disney. In his complaint, plaintiff alleges he was injured and sustained damages as a result of defendants' negligence when plaintiff slipped on ice at premises defendant LZ Associates (LZ) leased to defendants Wingfoot Commercial Tire Systems, LLC d/b/a Goodyear Commercial Tire and Service Centers (Wingfoot) and The Goodyear Tire & Rubber Company (Goodyear). LZ argues that it cannot be liable for plaintiff's injuries because that property had been leased to defendant Goodyear and LZ owed no duty of care to plaintiff. Plaintiff filed an oppostition to the motion. Defendants Goodyear and Wingfoot filed a joint opposition to the motion. Because genuine issues of material fact have been raised regarding LZ's degree of control over the structure of the parking lot and LZ's covenant in the lease to make building changes and installations to conform with applicable laws and ordinances, the motion is denied.

Background

The following facts in the record are undisputed unless stated otherwise. Between the hours of 1:30 and 2:30 a.m. on January 5, 2017, plaintiff Richard Disney, a police officer for the

1

city of Westbrook, Maine, responded to a Goodyear Tire and Service Center in response to a burglary alarm that sounded because the building's back door was ajar. Supp.'g S.M.F. (SMF) ¶ 1; Pl. Disney's Statement of Additional Material Facts (DSAMF) ¶ 1. When plaintiff arrived at the Goodyear location, he secured the front doors before finding the open door at the back of the building. DSAMF ¶ 3. He then called for back-up, and Officer Doug Mayer arrived within minutes. DSAMF ¶ 4.

The two officers found no sign of forced entry. DSAMF ¶ 4. When any of the exterior doors of the building opened after the security system was activated, their sensors would trip an alarm. DSAMF ¶ 9. According to William Gordon, Goodyear's M.R. Civ. P. 30(b)(6) representative, for at least three or four years before January 5, 2017, the rear door that plaintiff found open had not latched properly and could be pushed open when closed. DSAMF ¶ 10. The door at the back of the premises was known to be a difficult door to close. Def. Goodyear's Statement of Additional Material Facts (GSAMF) ¶ 31. According to the manager at Goodyear's plant, at least a dozen false alarms have been triggered at the premises in the last eight or nine years. SAMF ¶ 11. Whenever a security alarm is reported at the premises after business hours, Goodyear sends the police to secure the premises. DSAMF ¶ 12.

Plaintiff alleges the parking lot was poorly lit. GASMF ¶ 27. Plaintiff did not notice any ice in the Goodyear parking lot, but while walking through the parking lot at the Goodyear premises, he slipped on a patch of black ice. SMF ¶¶ 5-6. Plaintiff does not know the source of the ice. SMF ¶ 7.[1] He fell backward when he slipped and suffered serious injury to his right leg and ankle. DSAMF ¶ 5.

Goodyear owned and operated the premises. SMF ¶ 2 (as qualified). Goodyear leased the

---

[1] Goodyear objects to this fact and alleges the fact is not adequately supported by a record citation. The record citation is adequate.

2

premises from LZ Associates by the terms of a written lease agreement (Def. LZ's Ex. A). ¶ 3.[2]

Since the 1980s and at all relevant times, LZ Associates owned fee title to the property. GSAMF ¶ 19; DSAMF ¶ 6. In 1986, LZ constructed a building on the premises, and LZ and Goodyear entered into a commercial lease agreement for the property, which is located at 39 Thomas Drive in Colonial Westbrook Executive Park in Westbrook, Maine. DSAMF ¶¶ 7, 8; GSAMF ¶ 20. Since the initial term, the lease was renegotiated and renewed in 1995, 2000, and 2010. GSAMF ¶ 21 (as qualified). Both Goodyear and Disney make several statements about the contents of the lease, to which LZ objects, arguing that the entire lease is part of the record. Def. LZ's Exs. A and A-1.[3] Reviewing the whole lease agreement, the relevant provision is as follows:

> 10. (a) Lessor will keep the foundations and roof in good repair, and will make all repairs necessary to maintain the structural soundness of the floors and walls during the term hereof (Provided that required repairs are not caused by Lessee's negligence). Lessor will make all building changes or installations required to conform with applicable laws and ordinances (Provided such changes are not occasioned by Lessee's use). In the event Lessor shall fail or neglect to make any repairs which under the terms of this lease Lessor is required to make and of which (30 days written) notice has been given to Lessor by Lessee, or having started such repairs shall fail to complete them at the earliest possible date, Lessee may cause such repairs to be made or completed and may deduct from subsequent installments of rent...

SMF ¶ 4, Def. LZ's Ex. A at 4; DSAMF ¶ 15; GSAMF ¶ 23.

LZ installed the lighting in the parking lot, which plaintiff claims was inadequate. GSAMF ¶¶ 27-28. LZ had made several replacements and repairs during Goodyear's tenancy, including repairing a drain in the parking lot, repaving the parking lot, and conducting annual inspections of the property in the interest of preserving the local environment. DSAMF ¶ 14 (as qualified). Over

---

[2] Goodyear qualifies this fact by asserting that there was also a lease extension in effect at the time of plaintiff's injury. Goodyear does not support this qualification with any record citations. In its reply to plaintiff and Goodyear's opposition, LZ attached the lease extension, Def. LZ's Ex. A-1, and explained that LZ had not intended to omit the lease extension. Def. LZ's Reply S.M.F. ¶ 1.

[3] LZ objects to the introduction of portions or summaries of portions of the lease. The lease and the extension are in the record. SMF ¶ 3; Def. LZ's Reply S.M.F. ¶ 1. Pursuant to M.R. Evid. 106, the entire lease is referred to in analyzing the summary judgment motion.

the past ten years and pursuant to oral agreement, Goodyear hired Knight Property Services to keep the parking lot in a reasonably safe condition during winter by salting, sanding, and removing ice. SMF ¶¶ 8 (as qualified) - 10. Only Goodyear paid Knight Property Services to service the parking lot. SMF ¶ 11. Goodyear could restrict access to the parking lot by third parties and did limit use to business and employee parking, but the parties dispute whether Goodyear could restrict LZ's access to the parking lot. SMF ¶ 13 (as qualified). Goodyear was entitled to possession of the premises pursuant to the lease agreement. SMF ¶ 16 (as qualified).

The city of Westbrook adopted the International Property Maintenance Code (Code) as part of its local ordinances, which imposes a duty to maintain an exterior structure "in good repair, structurally sound and sanitary so as not to pose a threat to the public health, safety, or welfare" and requires "exterior doors, door assemblies, operator systems if provided, and hardware [to] be maintained in good condition." GSAMF ¶¶ 24-26; DSAMF ¶¶ 16, 22. The Code states that it "shall be construed to secure its expressed intent, which is to ensure public health, safety, and welfare insofar as they are affected by the continued occupancy and maintenance of structures and premises" and requires that "[e]xisting structures and premises that do not comply with these provisions shall be altered or repaired to provide a minimum level of health and safety as required herein." DSAMF ¶ 17. The Code is applicable to "all existing residential and nonresidential structures and all existing premises and constitute[s] minimum requirements and standards for premises, structures, equipment, and facilities for ... a reasonable level of safety from fire and other hazards" and "the responsibility of owners." DSAMF ¶ 19. The Code states that the "owner of the premises shall maintain the structures and exterior property in compliance with these requirements, except as otherwise provided for in this code" and that "[a] person shall not ... permit another person to occupy premises that are not in a sanitary and safe condition and that do

4

not comply with the requirements of this chapter." DSAMF ¶ 20. An owner is "any person, agent, operator, firm or corporation having legal or equitable interest in the property; or recorded in the official records of the state, county or municipality as holding title to the property; or otherwise having control of the property...." DSAMF ¶ 21.[4]

Legal Standard

A motion for summary judgment shall be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits referred to in the Rule 56(h) statements show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law. M.R. Civ. P. 56(c). The court may not decide any issue of fact on a summary judgment motion. Cottle Enters., Inc. v. Town of Farmington, 1997 ME 78, ¶ 11, 693 A.2d 330. "An issue is genuine if there is sufficient evidence supporting the claimed factual dispute to require a choice between the differing versions; an issue is material if it could potentially affect the outcome of the matter." Handlin v. Broadreach Pub. Rels., LLC, 2022 ME 2, ¶ 8, 265 A.3d 1008 (quoting Brown Dev. Corp. v. Hemond, 2008 ME 146, ¶ 10, 956 A.2d 104). The facts must be considered in the light most favorable to the non-moving party. Mahar v. StoneWood Transp., 2003 ME 63, ¶ 8, 823 A.2d 540. When the plaintiff is the party opposing summary judgment, the plaintiff has the burden to establish a prima facie case for each element of his cause of action for negligence. Addy v. Jenkins, Inc., 2009 ME 46, ¶ 8, 969 A.2d 935.

Discussion

LZ argues that it cannot be held liable for plaintiff's injuries because it owed no duty of care with respect to the parking lot of the leased premises. Whether a party owes a duty of care is

---

[4] LZ admits that these are Westbrook Code provisions but objects to their relevance based on M.R. Evid. 401-403. The undisputed record shows that LZ agreed in the lease to make all building changes or installations required to conform with applicable laws and ordinances. Def.'s Ex. A, § 10(a). The Code provisions are relevant to the issues in this motion.

5

a question of law. Graves v. S.E. Downey Registered Land Surveyor, P.A., 2005 ME 116, ¶ 9, 885 A.2d 779 (citing Welch v. McCarthy, 677 A.2d 1066, 1069 (Me. 1996)). A possessor of land owes a duty of reasonable care to persons lawfully on the property. Hankard v. Beal, 543 A.2d 1376, 1378 (Me. 1988). A landlord generally does not owe a duty of care where a tenant has assumed exclusive possession and control of the property. Stewart v. Aldrich, 2002 ME 16, ¶ 10, 788 A.2d 603 (citing Nichols v. Marsden, 483 A.2d 341, 343 (Me. 1984); Hankard, 543 A.2d at 1378). Control "means a power over the premises that the landlord reserves pursuant to the terms of the lease or the tenancy, whether express or implied, and does not include the incidental control that comes from being able to threaten tenants with nonrenewal of a lease or with eviction." Stewart, 2002 ME 16, ¶ 13, 788 A.2d 603.

The parties cite to Boles v. White, 2021 ME 49, 260 A.3d 697, which reaffirmed the rule that landlords are

> not liable for injuries caused by a dangerous condition on property that is under a tenant's exclusive control except when the landlord "(a) fails to disclose the existence of a latent defect which he knows or should have known existed but which is not known to the tenant nor discoverable by him in the exercise of reasonable care; (b) gratuitously undertakes to make repairs and does so negligently; or (c) expressly agrees to maintain the premises in good repair."

¶ 7 (quoting Nichols, 483 A.2d at 343). In this case, the lease agreement shows that LZ did expressly agree to maintain certain aspects of the premises, including the foundation, roof, floors, and walls. In addition, LZ expressly promised to make building changes and installations necessary to keep the premises in conformity with applicable codes and ordinances. Plaintiff and Goodyear argue that these promises show that LZ retained some control of the premises, creating relevant duties of care, even if those duties did not specifically concern snow and ice mitigation in the parking lot.

The two nonmoving parties advance three main theories supporting the existence of LZ's

6

duty of care. First, LZ had a duty to maintain the structure of the building and the door's latch under the lease. Breach of this duty could have caused door to open and trigger the false alarm. Second, LZ had a duty to maintain adequate lighting in the parking lot which was under its control or had a duty because it negligently installed the lighting. Breach of this duty could have prevented plaintiff from seeing the black ice on which he slipped. Third, LZ had a duty to maintain structural components of the parking lot that were under its control. Breach of this duty could have caused black ice to form and persist. LZ responds that it made no promises and took no action regarding the parking lot and did not retain control over the parking lot.

Whether LZ had a duty regarding the lighting or structure of the parking lot is a question of law but depends on a question of fact: whether LZ retained some control, express or implied, over the parking lot. See Rodrigue v. Rodrigue, 1997 ME 99, ¶ 11, 694 A.2d 924 ("Landlord-tenant liability frequently involves an analysis of whether the tenant took possession of an area, and if so, whether the landlord retained some control over it . . . The question is one for determation by the trier of fact."). The nonmoving parties have raised an issue of material fact as to LZ's retention of some control over the parking lot's structure. LZ's argument that it owes no duty fails.

Saunders v. Picard is distinguishable from the case at hand. 683 A.2d 501 (Me. 1996). The Law Court held in Saunders that evidence that the landlord had "fixed the furnace, the water system, and the chimney, without more, will not support an inference that [the landlord] had expressly agreed to maintain the premises in good repair." Id. at 502. Here, the issue is not whether the evidence that LZ had worked on the parking lot supports an inference that it agreed to maintain the entire rented premises in good repair. The issue is whether evidence that LZ had worked on the structure of the parking lot supports an inference that it retained control over structural maintenance of the parking lot.

7

The nonmoving parties allege that LZ's installation of parking lot lights indicate control over the lighting of the parking lot or liability flowing from negligent installation of inadequate lighting. The record does not indicate that the installation of lighting, unlike the repairs made to the parking lot, occurred during the tenancy. GASMF ¶ 28. The installation of lighting is insufficient as a matter of law to show that LZ retained control over this part of the parking lot. The undisputed record reflects that plaintiff did not see the ice before he slipped on it, and a genuine issue of material fact has been raised as to whether the lighting was inadequate or negligently installed. See Boles, 2021 ME 49, ¶ 7, 260 A.3d 697.

The record shows that LZ was required to keep the doors of the building in good condition.[5] Under section 10 of the lease, LZ covenanted to keep the building compliant with local ordinances. One of the applicable ordinances requires exterior doors to be maintained in good condition.

LZ argues that any breach of this duty is not relevant to the injury claimed in this negligence action. Whether the duty is relevant depends on the cause of plaintiff's injury. Causation is a question of fact. Murdock v. Thorne, 2017 ME 136, ¶ 13, 166 A.3d 119; see Searles v. Trs. of St. Joseph's Coll., 1997 ME 128, ¶ 6, 695 A.2d 1206 (quoting Tallwood Land & Dev. Co. v. Botka, 352 A.2d 753 (Me. 1976)) (On summary judgment "[t]he court cannot decide an issue of fact no matter how improbable seem the opposing party's chances of prevailing at trial."); M.R. Evid. 104(b) ("The court may admit the proposed evidence on the condition that the proof be introduced later."). Because the record reflects that the door opened without signs of forced entry and that a defect existed at the time the alarm rang, a genuine issue of material fact has been raised as to causation.

---

[5] Despite the arguments of the nonmoving parties, no genuine issue of material fact has been raised as to whether the walls, floors, or building structure caused the issue with the back door. Goodyear blames this lack of evidence on the ongoing discovery but has not offered any reason why it cannot obtain this information. The covenant in the lease to maintain the structural soundness of the building creates a duty that is irrelevant to plaintiff's injuries.

8

## Conclusion

LZ's motion is confined to whether it owed a duty of care. Genuine issues of material fact have been raised as to whether LZ owed duties of care to plaintiff. LZ's motion for summary judgment as a matter of law on its liability for plaintiff's injuries is denied.

The clerk is directed to incorporate this order into the docket by reference. M.R. Civ. P. 79(a).

Date:   June 28, 2023

Nancy Mills
Active Retired Judge

Entered on the Docket: 06/28/23

9